Exhibit C

Plaintiff's Counsel October 1, 2019 Letter to
Defendant Warden and October 3, 2019 Proof
of Receipt of Such Letter



**OFFICE OF THE FEDERAL DEFENDER**
**Eastern District of California**
**801 I Street, 3rd Floor**
**Sacramento, California  95814-2510**
**(916) 498.6666   FAX (916) 498.6656**

HEATHER E. WILLIAMS
FEDERAL DEFENDER

BENJAMIN D. GALLOWAY
CHIEF ASSISTANT DEFENDER

KELLY L. CULSHAW
CHIEF, CAPITAL HABEAS UNIT, AFD

October 1, 2019

**T.J. Watson, Warden**
USP – Terre Haute
U.S. Penitentiary
4700 Bureau Road South
Terre Haute, IN 47802

Re: Medical Treatment, Inmate Kenneth Barrett, #04342-063.

Dear Warden Watson,

This is a follow-up to my letter of July 26, 2019 to which I have not received a response. My client, Kenneth Barrett, has requested and been denied treatment for his long-term condition of chronic Hepatitis C (HCV) for over eight years, which has now reached a level of critical concern. His medical records that document the progressive nature of his disease were attached to and referenced therein. I have, again, included a copy of that correspondence and supporting documentation for your ease of reference. (Appx. A).

At Appx. B, I have attached a copy of a draft motion for injunctive relief. This letter is remitted by certified mail and, if we have not received a response from you **and** if you have not commenced treatment of Mr. Barrett's chronic HCV with DAA drugs, within thirty days of signed receipt of this correspondence, we will be compelled to file for relief in the appropriate court.

I would much prefer that we come to a quick resolution, which is to the obvious benefit of my client. In full candor, please note that last year the Chief Judge of the Southern District of Indiana granted summary judgment in favor of a Plaintiff Class of Indiana Department of Corrections' inmates who suffer from chronic HCV on their Eighth Amendment claims for

failure to treat their medical condition. *See Stafford v. Robert E. Carter, Jr., Michael Mitcheff, M.D., Monica Gipson, R.N., Wexford of Ind., LLC*, No. 1:17-cv-00289-JMS-MJD (S.D. Ind. Sept. 13, 2018). In its Order, the Court specifically rejected the Department of Corrections' argument that it could not be negligently indifferent because it had prioritized treatment in accordance with federal BOP policies. *See id.* at 14. The Court stated that:

> Defendants have offered no evidence, or even any argument, that any medical basis underlies or supports the "prioritization" approach advocated by the FBOP Guidance and adopted by the IDOC. And Plaintiffs' undisputed evidence establishes there is none. It is undisputed that treatment with DAA medication represents the medical standard of care for treatment of chronic HCV, regardless of the level of fibrosis or APRI score.

*Id.*

My client's serious medical condition continues to deteriorate and I have grave concerns regarding his health and welfare. I appreciate your prompt attention to this matter.

Very Respectfully,

Carrie L. Ward
Assistant Federal Defender

CF: Katherine Siereveld, Attorney Advisor; Andrew Sutton, SCU Counselor

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☒ No

1. Article Addressed to:

T.J. Watson, Warden
USP - Terre Haute
U.S. Penitentiary
4700 Bureau Road South
Terre Haute, IN 47802

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7012 2210 0000 2417 0324

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7012 2210 0000 2417 0324

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006        See Reverse for Instructions



7012 2210 0000 2417 0324

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL™

7012 2210 0000 2417 0324

# Appendix A

Letter to Warden Watson dated July 26, 2019 with attached medical records & verification of delivery.



**OFFICE OF THE FEDERAL DEFENDER**
**Eastern District of California**
801 I Street, 3rd Floor
Sacramento, California  95814-2510
(916) 498.6666   FAX (916) 498.6656

HEATHER E. WILLIAMS
FEDERAL DEFENDER

BENJAMIN D. GALLOWAY
CHIEF ASSISTANT DEFENDER

KELLY L. CULSHAW
CHIEF, CAPITAL HABEAS UNIT, AFD

July 26, 2019

T.J. Watson, Warden
USP – Terre Haute
U.S. Penitentiary
4700 Bureau Road South
Terre Haute, IN 47802

Re: Medical Treatment, Inmate Kenneth Barrett, #04342-063.

Dear Warden Watson,

I am an attorney representing Mr. Barrett in his post-conviction matters.  It has come to my attention that he has requested and been denied medical treatment for his long-term diagnosis of chronic Hepatitis C ("HCV").  I bring this directly to your attention and request your assistance in obtaining immediate and emergent medical treatment for his condition.

The prison has been aware of Mr. Barrett's documented HCV since 2011. Mr. Barrett was also diagnosed with fibrosis of the liver in 2012. Over the past eight years, many of the recommendations for testing and treatment made by treating physicians have been refused or ignored by BOP medical staff. The pattern of intentional disregard of these recommendations for treatment of Mr. Barrett is outlined in this letter.

In 2018, the Bureau of Prisons issued a policy for treatment of chronic Hepatitis C.  (This document is updated from an interim policy for treatment in effect from 2015-2016.  I have attached a copy of the current policy, dated 2018. See Attachment A. Federal Bureau of Prisons Clinical Guidance.

Evaluation and Management of Chronic HCV Infection, January 2018.) (Hereinafter, "Protocol").[1] Mr. Barrett satisfies all criteria for treatment. (See p. 9 of Protocol). However, with the ongoing indifference to his disease progression, this facility risks losing one significant criteria factor, i.e., that the inmate have more than 18 months life expectancy to complete treatment. Courts have found that this protocol bars treatment unless an inmate presents with advanced fibrosis or cirrhosis. "As such, the Hepatitis C Protocol presents a conscious disregard of a known risk" of complications, continued damage and disease progression, many of which can be life threatening. *Mumia Abu-Jamal v. John Wetzel, et. al.* (January 3, 2017). See also, *Hilton v. Wright*, 928 F. Supp. 2d 530, 542 (N.D.N.Y 2013)(approving Settlement Agreement for inmates' affected by qualifying provisions that preclude treatment when anticipated release date will predate completion of treatment).

This facility's persistent approach of "monitoring" Mr. Barrett's condition violates the current standard of medical care. It likewise violates the recommendations of his treating physician and thus creates a deliberate indifference to a serious medical need. 'Deliberate indifference' is "a mental state more blameworthy than negligence . . . it is "a state of mind that is the equivalent of criminal recklessness." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003).

Chronic HCV is undisputedly a serious medical condition.[2] It attacks, and if not treated, commonly destroys the liver. Left untreated, it can and will progress, causing inflammation, fibrosis of the liver, kidney damage, kidney failure, cirrhosis of the liver, liver cancer, and death. This Protocol, as implemented has caused, and continues to cause, unnecessary pain and an unreasonable risk of serious damage to Mr. Barrett's health. Mr. Barrett's treatment plan employs a monitoring system as opposed

---

[1] Between 2015 and 2016, the Department of Corrections had an interim policy for the treatment of chronic Hepatitis C. The interim policy was designed to prioritize treatment based on severity of current symptoms, but was not designed to preclude treatment for inmates with a lesser demonstrated rate of disease progression or current severity of symptoms.

[2] *See, e.g., Hatzfeld v. Eagen*, 9:08–CV–283, 2010 WL 5579883, at 10 (N.D.N.Y. Dec. 10, 2010) (Homer, M.J.)(collecting cases) Report–Rec adopted by 2011 WL 124535 (N.D.N.Y. Jan. 14, 2011).

to the treatment recommended by Mr. Barrett's attending physician and the accepted standards of care.[3] The actions of prison medical staff, the Warden and administrative staff are thus in violation of the Civil Rights Act, 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132; and the U.S. Constitution's Eighth Amendment, the right to be free from cruel and unusual punishment. See, e.g., *Estelle v. Gamble*, 429 U.S. 97 (1976).

As recourse, Mr. Barrett demands access and treatment by an infectious disease specialist and a liver oncologist, with expertise specific to chronic Hepatitis C and its aggravated conditions. Mr. Barrett further demands consultation and immediate direct action treatments, upon the advice of his assigned specialists.

Background.

Mr. Barrett has documented chronic HCV and this facility has been on notice of his condition since at least 2011. His viral loads have exceeded 10,000,000 U/L since 2016 and his ALT/AST levels have exceeded the acceptable range since at least 2012.[4] He underwent a liver biopsy in 2012 and was identified then as having stage 2 fibrosis of the liver. Further testing has been denied, since the facilities have not determined "treatment is being considered." (October 23, 2013 Regional Memorandum

---

[3] See, *Mumia Abu-Jamal v. John Wetzel, et. al.* (January 3, 2017) Middle District of Pennsylvania. Dr. Paul Noel, Department of Corrections (DOC) Bureau of Health Care Services Chief of Clinical Services, member of Hepatitis C Treatment Committee, testified and provided the factual predicate for the Court. He served on the committee in the drafting and implementation of the chronic Hepatitis C Protocol. *Id.*

[4] ALT and aspartate aminotransferase ("AST") are two liver enzymes. They are both proteins made by liver cells; ALT is only made by liver cells while AST is found in parts of the body other than the liver, including the heart, kidneys, muscles, and brain. When liver cells are damaged, ALT and AST leak out into the bloodstream and the levels of ALT and AST in the blood become higher than normal. A high ALT level often means there is some liver damage. A high AST level could indicate damage in many different parts of the body. ALT and AST levels do not tell you how much liver damage there is, or whether the liver is getting better or worse, and small changes are expected. Decrease in levels however are helpful to analyze the success of HCV treatment. *See Understanding Lab Tests*, United States Department of Veterans Affairs (Mar. 1, 2013), http:// www. hepatitis. va. gov/ patient/ diagnosis/ labtests- AST. Asp

denying remedy for medical indifference to Mr. Barrett's viral condition).  His treating physician has

recommended treatment.

Listed are the attached grievances filed by Mr. Barrett to BOP medical staff, appeals, and relevant

responses thereto.

a.  May 23, 2012 regional response, denying treatment.  Identifying that lab results indicate a viral load of 8,148.789.  A livery biopsy was done December 20, 2011 and determined inflammation at grade 1-2 and fibrosis at stage 2.  The non-formulary treatment was deferred at the Central Office.

b.  June, 2012 and response June 11, 2012.

c.  June 28, 2012, Dr. Wilson requested non-formulary triple therapy treatments, identifying the supporting medical documentation.

d.  July 12, 2013, grievance alleging "deliberate medical indifference" to the Hepatitis C treatment and corresponding medical concerns.  February 28, 2013, a renewed consent for treatment in re: Hepatitis C.

e.  March 6, 2013 – 9 page denial from Regional, identifying "inmate is under a sentence of death" and deferring and/or denying treatment for Hepatitis C.

f.  October 21, 2013, Medlab resulting indicating viral load of 7523656H, under 15 (million) IU/mL; HCV, RNA, PCR at 6.88 (million) H, log IU/mL.  [First page of report missing].

g.  October 24, 2013, Regional's administrative denial of non-formulary treatment, identifies the miscommunication and lack of coordination in Mr. Barrett's care.

> The non-formulary request for HCV treatment was disapproved due to your relatively mild stage of fibrosis, with treatment being deferred.[5]
>
> In regards to the repeat requests for a liver biopsy, it was determined the December 28, 2011, biopsy was sufficient and did not warrant repeating at this time.  Furthermore, viral load labs were ordered by a provider for June 11, 2012; however, the test was cancelled on June 14, 2012, due to insufficient blood to run the test.  The viral load was subsequently drawn on October 22, 2012, and again on May 23, 2013.  The viral load test does not need to be drawn again unless treatment is being considered.

h.  January 2, 2014, test results indicating AST 38, 10/37 U/L (acceptable range); ALT 54, 8-40 U/L.

i.  On July 14, 2016, Mr. Barrett sent a letter to Dr. Sean Wilson, asking for an update on his testing for viral load increases, since he had surpassed the 10,000,000 per IU/ml.  On August 17, 2016, Mr. Barrett repeated this request.

---

[5] But see, Regional deferral dated October 22, 2012 – based on advanced inflammation "it would be prudent to consider deferring treatment" and recommending Mr. Barrett submit a new non-formulary request for one of the HCV protease inhibitors

j. September 24, 2018, THX-1330, Mr. Barrett requested intervening medical care and reported current systems, i.e., pain in the liver area, shaking, loss of sleep, fatigue, weakness, and black out episodes resulting in falls.  Joint ache, headaches and fear and distress resulting from the progress of the untreated condition.

k. January 20, 2016, letter written to Mr. Rubska asking for blood draws to check the viral load status.

l. On October 5, 2018, you responded and claimed that the disease did not meet treatment criteria, "as determined by the Infectious Disease Team at FCC Terre Haute."  The referenced materials were not attached.

m. Mr. Barrett appealed this decision on October 11, 2018.

n. This was denied on October 31, 2018 and referenced Mr. Barrett's medical records, identifying an AST-Platelet Radio Index (APRI) of 0.43, "priority level 3."  The underlying medical documentation was not attached.  Mr. Barrett again appealed on November 15, 2018.

o. This was denied, now claiming that Mr. Barrett is "priority level 2."

We were able to obtain some, but not all, medical records.[6] Relevant records indicate an increase in both ALT and AST levels.  These are attached for your consideration.

a. March 15, 2017: Viral Load, 10.4E6H with notes indicating that this exceeds the 10 Million IU/ml that qualifies for high priority treatment.

b. May 17, 2017: AST 37, 10-37U/L; ALT 43, 8-40/U/L

c. July 25, 2018: AST 36, 10-37 U/L and ALT 49, 49-126 U/L

d. Testing in 2019 showed AST level has risen from 36 to 42 and ACT level has risen from 45 to 49. We have not yet received these records.

Conclusion.

   Mr. Barrett's condition is life threatening.  This facility has been on notice of the condition since at least 2011 and of the recommended treatment since 2016.  The actions of the prison are in direct contradiction to Dr. Wilson's recommendations and Mr. Barrett has exhausted his administrative remedies.  Mr. Barrett seeks immediate response and relief, with access to adequate medical care and treatment, in order to address the ever increasing impacts of his documented diagnosis of a life-threatening illness.

---

[6] A request for medical records from the BOP was made on February 20, 2019.  A response was received on March 4, 2019.  It stated that processing of your request could take six months. Under the circumstances, the length of time for release is unacceptable and negligent.  This request is still pending.

Should you have any questions, I can be reached at 916-498-6666 or Carrie_Ward@fd.org. I appreciate your time and attention to this matter and request resolution by August 9, 2019.

Very Respectfully,

Carrie L. Ward
Assistant Federal Defender

CF: Katherine Siereveld, Attorney Advisor; Andrew Sutton, SCU Counselor

# Attachment A

# Evaluation and Management of Chronic HCV Infection, Federal Bureau of Prisons Clinical Guidance

# EVALUATION AND MANAGEMENT OF CHRONIC HEPATITIS C VIRUS (HCV) INFECTION

**Federal Bureau of Prisons**

**Clinical Guidance**

**JANUARY 2018**

*Federal Bureau of Prisons (BOP) Clinical Guidance is made available to the public for informational purposes only. The BOP does not warrant this guidance for any other purpose, and assumes no responsibility for any injury or damage resulting from the reliance thereof. Proper medical practice necessitates that all cases are evaluated on an individual basis and that treatment decisions are patient-specific. Consult the BOP Health Management Resources Web page to determine the date of the most recent update to this document: http://www.bop.gov/resources/health_care_mngmt.jsp.*

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

## WHAT'S NEW IN BOP GUIDANCE REGARDING HCV INFECTION?

*The current version of this guidance contains the following major revisions:*

- **Two new combination DAA medications have been FDA-approved** for the treatment of chronic hepatitis C virus (HCV) infection and are now included in *Section 6, Recommended Treatment Regimens*:

  ▶ **Glecaprevir/pibrentasvir (Mavyret™)** and

  ▶ **Sofosbuvir/velpatasvir/voxilaprevir (Vosevi®)**.

- **Recommended HCV treatment regimens have been updated** to reflect the current guidance from the American Association for the Study of Liver Diseases (AASLD).

- **The APRI cutoff for treatment Priority Level 2 has been lowered to ≥ 0.7.**

- **The appendices containing drug information tables are no longer included in this guidance.** In light of the rapidly changing HCV treatment landscape, providers are now refered to manufacturer's prescribing information, Facts and Comparisons (available in BEMR), and other validated resources for the most up-to-date information on individual HCV drugs.

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

# TABLE OF CONTENTS

1. PURPOSE AND OVERVIEW ...................................................................................................... 1

2. SCREENING FOR HCV INFECTION .......................................................................................... 2
   Inmate History and Patient Education .................................................................................... 2
   Screening Criteria ................................................................................................................... 2
   Screening Method ................................................................................................................... 3
   Screening of Nonsentenced Inmates ..................................................................................... 3
   Refusal of Testing ................................................................................................................... 3

3. INITIAL EVALUATION OF ANTI-HCV POSITIVE INMATES ........................................................ 4
   Baseline Evaluation ................................................................................................................ 4

4. ASSESS FOR HEPATIC CIRRHOSIS AND DECOMPENSATION ................................................ 5
   Assessing for Hepatic Fibrosis and Cirrhosis ........................................................................ 6
   Assessing Hepatic Compensation .......................................................................................... 7
      TABLE 1: Using CTP Scores to Assess Hepatic Compensation ........................................ 7
   Additional Interventions for Inmates with Cirrhosis ............................................................... 7

5. BOP PRIORITY CRITERIA FOR HCV TREATMENT ................................................................... 8
   Priority Level 1: High Priority for Treatment * ........................................................................ 8
   Priority Level 2: Intermediate Priority for Treatment * ........................................................... 9
   Priority Level 3: Low Priority for Treatment * ......................................................................... 9
   Other Criteria for Treatment ................................................................................................... 9

6. RECOMMENDED TREATMENT REGIMENS ............................................................................. 10
   Direct Acting Antiviral Medications (DAAs) .......................................................................... 10
   Preferred Treatment Regimens ............................................................................................ 14
   Potential Drug Interactions ................................................................................................... 14
   Regimens Not Recommended .............................................................................................. 15

7. MONITORING ......................................................................................................................... 15
   Pretreatment Assessment .................................................................................................... 15
   On-Treatment Monitoring ...................................................................................................... 16
   Post-Treatment Monitoring ................................................................................................... 17
   Ongoing Monitoring ............................................................................................................... 17

8. SPECIAL CONSIDERATIONS ................................................................................................. 18
   HCV Infection with More Than One Genotype ...................................................................... 18
   HBV Coinfection .................................................................................................................... 18
   HIV Coinfection ..................................................................................................................... 18
   Decompensated Cirrhosis ..................................................................................................... 19
      TABLE 2: HCV Treatment Recommendations for Decompensated Cirrhosis .................. 20
   Liver Transplant Recipients .................................................................................................. 21
      TABLE 3: HCV Treatment Recommendations for HCV in Liver Transplant Recipients ... 21
   Chronic Kidney Disease (CKD) ............................................................................................. 22
   Pregnancy ............................................................................................................................. 22

REFERENCES ........................................................................................................................... 24

GLOSSARY OF ABBREVIATIONS .............................................................................................. 25

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

APPENDIX 1. TREATMENT OPTIONS FOR HCV GENOTYPES 1, 4, 5, AND 6[A,B,C] ............................................. 26

APPENDIX 2. TREATMENT OPTIONS FOR HCV GENOTYPES 2 AND 3 [A,B,C] ..................................................... 27

APPENDIX 3. HEPATITIS C TREATMENT MONITORING SCHEDULE .............................................................. 28

APPENDIX 4. MANAGEMENT OF HEMATOLOGIC CHANGES ......................................................................... 29

APPENDIX 5. RESOURCES—PREVENTION AND TREATMENT OF VIRAL HEPATITIS ......................................... 30

APPENDIX 6. HEPATITIS C TREATMENT ALGORITHM/NONFORMULARY REQUEST WORKSHEET ....................... 31

# 1. PURPOSE AND OVERVIEW

The Federal Bureau of Prisons (BOP) *Clinical Guidance on Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection* provides the most current BOP recommendations for the treatment of chronic HCV infection in the federal inmate population. As stated by the current American Association for the Study of Liver Diseases (AASLD)/Infectious Diseases Society of America (IDSA) HCV Guidance, **the goal of treatment of HCV-infected persons is to:**

> ... *reduce all-cause mortality and liver-related health adverse consequences, including end-stage liver disease and hepatocellular carcinoma, by the achievement of virologic cure as evidenced by a sustained virologic response.*

**In light of the rapidly changing HCV treatment landscape,** review of the most recent recommendations from AASLD/IDSA (see link below) is recommended. BOP Central Office Medical staff will continue to monitor this guidance and provide updates as necessary.

→ *Be sure to consult the BOP Health Management Resources website to determine the date of the most recent update to this document: http://www.bop.gov/resources/health_care_mngmt.jsp.*

→ *The AASLD/IDSA guidance is available at https://www.hcvguidelines.org. See the References section in this document for a complete citation.*

**In general, the BOP promotes a modified test-and-treat strategy for HCV infection.** The BOP-recommended approach to evaluation and management of HCV includes five basic steps.

**STEP 1: Test for HCV infection with anti-HCV (HCV Ab) test.**
>    → *See Section 2, Screening for HCV Infection.*
- All sentenced inmates
- Diagnostic evaluation of other conditions
- Upon inmate request

**STEP 2: Perform a baseline evaluation of inmates who are anti-HCV positive.**
>    → *See Section 3, Initial Evaluation of Anti-HCV Positive Inmates.*
- Targeted history and physical exam
- Lab tests – CBC, PT/INR, liver panel, serum creatinine and eGFR, hepatitis B serology (HBsAg, anti-HBs, anti-HBc), HIV Ab, quantitative HCV RNA viral load with reflex testing for HCV genotype

**STEP 3: Assess for hepatic cirrhosis/compensation *and* BOP priority criteria for treatment, if HCV RNA is detectable.**
- Assess for hepatic cirrhosis/compensation: Calculate APRI score if no obvious cirrhosis; Calculate CTP score if cirrhosis is known or suspected (→ *Section 4*).
- Assess for BOP priority criteria for treatment of HCV (→ *Section 5*).

**STEP 4: Perform a pretreatment assessment, if priority criteria for treatment are met.**
- Determine the most appropriate DAA regimen(s)
  - DAA regimen selection is based on HCV genotype, cirrhosis, compensated or uncompensated liver disease, prior treatment history, presence of resistance associated substitutions, and drug interactions (→ *Appendix 1* and *Appendix 2*).
  - Refer to AASLD HCV guidance, DHHS antiretroviral guidelines, and manufacturers' prescribing information for specific drug interactions (→ *References*).
- Obtain pretreatment labs within 90 days of starting treatment (→ *Appendix 3*).
- Submit Nonformulary Request (NFR) for Hepatitis C Treatment Algorithm; if approved, submit NFR(s) for specific DAA medication(s) (→ *Appendix 6*).
- Provide preventive health care for patients with cirrhosis.

**STEP 5: Monitor patient during and after treatment.**
- Start treatment with approved DAA regimen.
- Follow monitoring schedule described in *Appendix 3*.

## 2. SCREENING FOR HCV INFECTION

### INMATE HISTORY AND PATIENT EDUCATION

A health history should be obtained from all newly incarcerated BOP inmates. In addition, these inmates should be provided with educational information regarding prevention and transmission, risk factors, testing, and medical management of HCV infection, in accordance with BOP policy. Health education efforts should make use of the BOP peer-oriented video on infectious diseases, *Staying Alive*, located in Section 5: A–Z Topics on the HSD Infection Control website.

### SCREENING CRITERIA

*Testing for HCV infection is recommended for (a) all sentenced inmates, (b) all inmates with certain clinical conditions, and (c) all inmates who request testing.*

a. RISK FACTORS FOR SENTENCED INMATES

An OPT OUT strategy of voluntary testing for HCV infection at the prevention baseline visit is recommended for all sentenced inmates. An "opt out" approach involves an informed refusal of testing, rather than informed consent (or "opt in") for testing. After informing a patient of the indications and plan for testing, the particular test is ordered and performed—unless the patient declines it. Testing is considered voluntary in that it is good clinical practice, but is not required by policy or law.

The AASLD, CDC, and USPSTF recommend risk factor-based and birth cohort screening for HCV infection. The incarcerated population is reported to have higher prevalence rates of HCV than the general population and is identified by the AASLD and USPSTF as a risk factor for which screening is recommended.

*Other well-described risk factors, which should be considered when recommending HCV testing to sentenced inmates, include:*

► Ever injected illegal drugs or shared equipment (including intranasal use of illicit drugs)

► Received tattoos or body piercings while in jail or prison, or from any unregulated source

► HIV or chronic hepatitis B virus (HBV) infection

► Received a blood transfusion or an organ transplant before 1992, received clotting factor transfusion prior to 1987, or received blood from a donor who later tested positive for HCV infection

► History of percutaneous exposure to blood

► Ever received hemodialysis

► Born to a mother who had HCV infection at the time of delivery

► Born between 1945 and 1965

**b. CLINICAL CONDITIONS FOR ANY INMATE**

*HCV testing is recommended for all inmates with the following clinical conditions, regardless of sentencing status:*

- A reported history of HCV infection without prior medical records to confirm the diagnosis
- Cirrhosis
- Chronic hemodialysis – screen alanine aminotransferase (ALT) monthly and anti-HCV semiannually
- Elevated ALT levels of unknown etiology
- Evidence of extrahepatic manifestations of HCV – mixed cryoglobulinemia, membranoproliferative glomerulonephritis, porphyria cutanea tarda, vasculitis

## SCREENING METHOD

The preferred screening test for HCV infection is an immunoassay that measures the presence of antibodies to HCV antigens, referred to as *HCV Ab* or *anti-HCV*. The presence of these antibodies only indicates a history of exposure to the HCV virus, but does not distinguish between active and resolved infection.

Initial testing with an HCV RNA test is recommended for cases with a known prior positive HCV Ab if they are at risk for reinfection or suspected of reinfection, and if they previously cleared the HCV spontaneously or achieved a sustained virologic response (SVR) with treatment.

## SCREENING OF NONSENTENCED INMATES

Unless clinically indicated (see the *clinical conditions* listed under Screening Criteria above), screening should ordinarily not be pursued for asymptomatic, highly mobile, nonsentenced inmates. Referrals to community HCV testing sites should be made when appropriate.

➔ **EXCEPTION:** *Long-term inmates in BOP detention facilities should be screened for HCV infection in accordance with the guidance for sentenced inmates.*

## REFUSAL OF TESTING

Sentenced inmates who decline testing at the baseline visit, should be counseled about and offered HCV testing during periodic preventive health visits.

➔ *A treatment refusal form is recommended for every testing and treatment refusal.*

3

## 3. INITIAL EVALUATION OF ANTI-HCV POSITIVE INMATES

Initial evaluation of anti-HCV positive inmates includes **(a)** a baseline history and physical examination, and **(b)** baseline lab tests. The inmate should also be **(c)** assessed regarding the need for preventive health interventions such as vaccines and screenings for other conditions, as well as **(d)** counseled with information on HCV infection.

*Determining whether the patient meets BOP priority criteria for treatment is an important part of the initial evaluation of anti-HCV positive inmates:*

➔ *If cirrhosis is present, see Section 4, Assess for Hepatic Cirrhosis and Decompensation, to determine whether the liver disease is compensated or decompensated.*

➔ *Section 5, BOP Priority Criteria for Treatment, lists the clinical scenarios that will be used in the BOP to prioritize inmates for treatment.*

### BASELINE EVALUATION

*A baseline clinician evaluation should be conducted for all inmates who are anti-HCV positive. At minimum, this evaluation should include the following elements:*

**a. TARGETED HISTORY AND PHYSICAL EXAMINATION:**

- ▸ Evaluate for signs and symptoms of liver disease, quantify prior alcohol consumption, and determine risk behaviors for acquiring HCV infection (see the section on risk factors under *Screening Criteria* above). Attempt to estimate the earliest possible date of infection, including when risk factors for exposures started and stopped, e.g., the time period in which the inmate engaged in injection drug use.

- ▸ Evaluate for other possible causes of liver disease, especially alcoholism, nonalcoholic steatohepatitis (NASH), iron overload, and autoimmune hepatitis.

- ▸ Inquire about prior treatment for HCV infection, specific medications used, dosages and duration of treatment, and outcomes, if known.

**b. LABORATORY TESTS:**

Recommended baseline laboratory tests are listed in *Appendix 3* and include the following:

- ▸ Complete blood count (CBC); prothrombin time (PT) with International Normalization Ratio (INR); liver panel (albumin, total and direct bilirubin, serum alanine aminotransferase (ALT) and aspartate aminotransferase (AST), and alkaline phosphatase); serum creatinine; and calculated glomerular filtration rate (GFR).
    - ➔ *Unexplained abnormalities should prompt additional diagnostic evaluations, as clinically indicated, to determine the underlying cause, e.g., low hemoglobin/platelet count or GFR.*

- ▸ Hepatitis B serology (HBsAg, anti-HBs, and anti-HBc) and HIV antibody (anti-HIV or HIV Ab).
    - ➔ *Refer to the relevant BOP Clinical Guidance for management of a positive HBsAg or HIV Ab test.*

- ▸ Quantitative HCV RNA viral load testing, sensitive to $\leq$ 25 IU/ml, with reflex testing for HCV genotype, to determine if the inmate has active HCV infection and identify the HCV genotype.
    - ➔ *Undetectable levels of HCV RNA indicate resolved infection or a false positive HCV Ab test. Such cases do not require ongoing follow-up or monitoring of this condition in a chronic care clinic.*
- ▸ Unless otherwise clinically indicated, testing for other causes of liver disease—e.g., antinuclear antibody (ANA), ferritin, iron saturation, ceruloplasmin—are not routinely ordered in the evaluation of a positive HCV Ab test.
- ▸ A urine drug screen is recommended only if ongoing substance use is suspected or if it is otherwise clinically indicated.

**c. PREVENTIVE HEALTH MEASURES:**

All inmates who are anti-HCV positive should be evaluated to assess the need for the preventive health interventions, including the following:

- ▸ **Hepatitis B vaccine:** Indicated for susceptible inmates with chronic HCV infection. For foreign-born inmates, consider prescreening for hepatitis B immunity prior to vaccination.
    - ➔ *Inmates with evidence of liver disease should be priority candidates for hepatitis B vaccination.*
- ▸ **Hepatitis A vaccine:** Indicated for susceptible inmates with chronic HCV. For foreign-born inmates, consider prescreening for hepatitis A immunity prior to vaccination.
- ▸ **Influenza vaccine:** Offer to all HCV-infected inmates annually.
    - ➔ *Inmates with cirrhosis are high priority for influenza vaccine.*

**d. PATIENT EDUCATION:**

Inmates diagnosed with chronic HCV infection should be counseled by a health care provider regarding the natural history of the infection, potential treatment options, and specific measures to prevent transmitting HCV infection to others (both during incarceration and upon release).

## 4. ASSESS FOR HEPATIC CIRRHOSIS AND DECOMPENSATION

Cirrhosis is a condition of chronic liver disease marked by inflammation, degeneration of hepatocytes, and replacement with fibrotic scar tissue. The natural history of HCV is such that 50–80% of HCV infections become chronic. Progression of chronic HCV infection to fibrosis and cirrhosis may take years in some patients and decades in others—or, in some cases, may not occur at all. Most complications from HCV infection occur in people with cirrhosis.

- Patients with advanced hepatic fibrosis (primarily stage 3) have a 10% per year rate of progressing to cirrhosis (stage 4).
- Those with cirrhosis have a 4% per year rate of developing decompensated cirrhosis, and a 3% per year rate of developing hepatocellular carcinoma.
- ➔ *The Child-Turcotte-Pugh (CTP) score is a useful tool in determining the severity of cirrhosis and in distinguishing between compensated and decompensated liver disease. See the discussion below under Assessing Hepatic Compensation.*

## ASSESSING FOR HEPATIC FIBROSIS AND CIRRHOSIS

**Assessing for advanced fibrosis and cirrhosis is recommended for all inmates with HCV infection** in order to select the most appropriate treatment regimen, prioritize inmates for treatment of HCV, and determine the need for additional health care interventions. Cirrhosis may be diagnosed in several ways:

- **Symptoms and signs that support the diagnosis of cirrhosis may include:** Low albumin or platelets, elevated bilirubin or INR, ascites, esophageal varices, and hepatic encephalopathy. However, isolated lab abnormalities may require additional diagnostic evaluation to determine the etiology.

- **The AST-Platelet Ration Index (APRI) is the BOP-preferred method for non-invasive assessment of hepatic fibrosis and cirrhosis:**

  - ▸ The APRI score, a calculation based on results from two blood tests—the AST (aspartate aminotransferase) and the platelet count—is a less invasive and less expensive means of assessing fibrosis than a liver biopsy. **If a person is known to have cirrhosis, the APRI is irrelevant and unnecessary.**

    - → *The formula for calculating the APRI score is:* **[(AST/AST ULN) x 100] / platelet count ($10^9$/L).**
    - → *A calculator is available at:* http://www.hepatitisc.uw.edu/page/clinical-calculators/apri

  - ▸ **An APRI score ≥ 2.0 may be used to predict the presence of cirrhosis.** At this cutoff, the APRI score has a sensitivity of 48%, but a specificity of 94%, for predicting cirrhosis. Inmates with an APRI score ≥ 2.0 should have an abdominal ultrasound performed to identify other findings consistent with cirrhosis (see *abdominal imaging studies* bullet below in this list). Lower APRI scores have different sensitivities and specificities for cirrhosis. For example, an APRI score ≥ 1 has a sensitivity of 77% and a specificity of 75% for predicting cirrhosis.

  - ▸ **The APRI may also be used to predict the presence of significant fibrosis (stages 2 to 4, out of 4).** Using a cutoff of ≥ 0.7, the sensitivity is 77% and specificity is 72% for significant fibrosis.

  - ▸ **The APRI score may be invalidated in cases of splenectomy. An alternative non-invasive test, e.g., Fibrosure, may be appropriate.**

- **Liver biopsy is no longer required** unless otherwise clinically indicated or if there is uncertainty about the stage of fibrosis, based on results from non-invasive testing or other clinical indicators. However, the presence of cirrhosis on a prior liver biopsy may be used to meet the BOP criteria for HCV treatment.

- **Although a combination of direct biomarkers and transient elastography is emerging as an accurate non-invasive assessment of fibrosis,** the data is insufficient at this time to establish it as the new standard over validated indirect biomarkers such as the APRI score.

- **Abdominal imaging studies** such as ultrasound or CT scan may identify findings consistent with or suggestive of the following: *cirrhosis* (nodular contour of the liver), *portal hypertension* (ascites, splenomegaly, varices), or *hepatocellular carcinoma* (HCC). Abdominal ultrasound is routinely performed in cases of known or suspected cirrhosis, and as clinically indicated on a case-by-case basis.

## ASSESSING HEPATIC COMPENSATION

Assessing hepatic compensation is important for determining the most appropriate HCV treatment regimen to be used. The recommended HCV treatment regimen may differ depending on whether the cirrhosis is compensated or decompensated.

The **CTP SCORE** is a useful tool to help determine the severity of cirrhosis and is used by the AASLD to distinguish between compensated and decompensated liver disease in patients with known or suspected cirrhosis. (See the table on the next page.)

→ *CTP calculators are readily available on the Internet and are not reproduced in this document. See: http://www.hepatitisc.uw.edu/page/clinical-calculators/ctp*

The CTP score includes five parameters (albumin, bilirubin, INR, ascites, and hepatic encephalopathy), each of which is given a score of 1, 2, or 3. The sum of the five scores is the CTP score, which is classified as shown in **TABLE 1** below:

**TABLE 1: USING CTP SCORES TO ASSESS HEPATIC COMPENSATION**

| CTP SCORE | CTP CLASS | HEPATIC COMPENSATION |
|-----------|-----------|----------------------|
| 5–6 | Class A | **Compensated cirrhosis** |
| 7–9 | Class B | **Decompensated cirrhosis** |
| ≥ 10 | Class C | |

**NOTES:**

→ *Warfarin anticoagulation will invalidate CTP calculations if the INR is 1.7 or higher.*
→ *It is recommended that cases of **decompensated cirrhosis** be managed in consultation with a clinician experienced in the treatment of this condition.*
→ *Inmates with **CTP Class C decompensated cirrhosis** may have a reduced life expectancy and should be considered for Reduction In Sentence/Compassionate Release in accordance with current policy (Compassionate Release/Reduction in Sentence) and procedures.*

## ADDITIONAL INTERVENTIONS FOR INMATES WITH CIRRHOSIS

*The following recommendations apply to all inmates with cirrhosis, whether they have ongoing or resolved HCV infection.*

- **Pneumococcal vaccine:** Offer to all HCV-infected inmates with cirrhosis who are 19 through 64 years of age.
  → *See the BOP Clinical Guidance on Preventive Health Care Screening.*
- **Hepatocellular carcinoma (HCC) screening:** Liver ultrasound is recommended every six months for patients with both cirrhosis *and* chronic HCV infection.
- **Esophageal varices screening:** Screening for esophageal and gastric varices with esophagogastroduodenoscopy (EGD) is recommended for patients diagnosed with cirrhosis.

*Other healthcare interventions recommended for patients with cirrhosis may include:*

- Nonselective beta blockers for prevention of variceal bleeding in patients with esophageal varices.
- Antibiotic prophylaxis if risk factors are present for spontaneous bacterial peritonitis.

- Optimized diuretic therapy for ascites.
- Lactulose and rifaximin therapy for encephalopathy.

In general, NSAIDs should be avoided in advanced liver disease/cirrhosis, and metformin should be avoided in decompensated cirrhosis. The detailed management of cirrhosis is beyond the scope of this document. Other resources should be consulted for more specific recommendations related to this condition.

## 5. BOP PRIORITY CRITERIA FOR HCV TREATMENT

Determining whether BOP priority criteria for treatment are met is an important part of the initial evaluation and ongoing management of inmates with chronic HCV infection. Although all patients with chronic HCV infection may benefit from treatment, certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment. The BOP has established priority criteria to ensure that those with the greatest need are identified and treated first. The BOP Medical Director will provide periodic guidance on specific strategies for implementing these priority levels.

> \* EXCEPTIONS to the following criteria for PRIORITY LEVELS 1–3 will be made on an individual basis and will be determined primarily by a compelling or urgent need for treatment, such as evidence for rapid progression of fibrosis, or deteriorating health status from other comorbidities.

### PRIORITY LEVEL 1: HIGH PRIORITY FOR TREATMENT \*

- **ADVANCED HEPATIC FIBROSIS**
  - APRI $\geq$ 2.0, or
  - Metavir or Batts/Ludwig stage 3 or 4 on liver biopsy, or
  - Known or suspected cirrhosis
- **LIVER TRANSPLANT RECIPIENTS**
- **HEPATOCELLULAR CARCINOMA (HCC)**
- **COMORBID MEDICAL CONDITIONS ASSOCIATED WITH HCV, INCLUDING:**
  - Cryoglobulinemia with renal disease or vasculitis
  - Certain types of lymphomas or hematologic malignancies
  - Porphyria cutanea tarda
- **IMMUNOSUPPRESSANT MEDICATION FOR A COMORBID MEDICAL CONDITION**
  - Some immusuppressant medications (e.g., certain chemotherapy agents and tumor necrosis factor inhibitors) may be needed to treat a comorbid medical condition, but are not recommended for use when infection is present. Although data are insufficient and current guidelines are inconsistent regarding treatment of HCV infection in this setting, such cases will be considered for prioritized treatment of HCV on an individual basis.
- **CONTINUITY OF CARE FOR THOSE ALREADY STARTED ON TREATMENT**, including inmates who are newly incarcerated in the BOP.

## PRIORITY LEVEL 2: INTERMEDIATE PRIORITY FOR TREATMENT *

- **EVIDENCE FOR PROGRESSIVE FIBROSIS**
  - APRI score $\geq 0.7$
  - Stage 2 fibrosis on liver biopsy

- **COMORBID MEDICAL CONDITIONS** associated with more rapid progression of fibrosis
  - Coinfection with HBV or HIV
  - Comorbid liver diseases (e.g., autoimmune hepatitis, hemochromatosis, fatty infiltration of the liver, steatohepatitis)
  - Diabetes mellitus

- **CHRONIC KIDNEY DISEASE (CKD)** with GFR $\leq 59$ mL/min per 1.73 $m^2$

## PRIORITY LEVEL 3: LOW PRIORITY FOR TREATMENT *

- Stage 0 to stage 1 fibrosis on liver biopsy
- APRI $< 0.7$
- All other cases of HCV infection meeting the eligibility critera for treatment, as noted right below under *Other Criteria for Treatment.*

## OTHER CRITERIA FOR TREATMENT

*In addition to meeting the above criteria for PRIORITY LEVELS 1–3, inmates being considered for treatment of HCV infection should:*

- Have no contraindications to, or signicifant drug interactions with, any component of the treatment regimen.

- Not be pregnant, especially for any regimen that would require ribavirin or interferon.

- Have sufficient time remaining on their sentence in the BOP to complete a course of treatment.
  - → *Inmates with high priority criteria (PRIORITY LEVEL 1), but insufficient time remaining in BOP custody, may be considered for treatment if they will have access to medications and health care providers for continuity of care at the time of release.*

- Have a life expectancy $> 18$ months.

- Demonstrate a willingness and an ability to adhere to a rigorous treatment regimen and to abstain from high-risk activities while incarcerated.
  - → *Inmates with with evidence for ongoing high-risk behaviors, e.g., injection drug use, are considered for HCV treatment on an individual basis. Referral for evaluation and treatment of substance abuse is recommended.*

## 6. RECOMMENDED TREATMENT REGIMENS

**Recommendations for preferred HCV treatment regimens continue to evolve, but still depend on several factors:**

- ▸ HCV GENOTYPE
- ▸ PRIOR HCV TREATMENT HISTORY
- ▸ COMPENSATED VS. DECOMPENSATED LIVER DISEASE
- ▸ RESISTANCE-ASSOCIATED SUBSTITUTIONS (CERTAIN CLINICAL SCENARIOS)
- ▸ DRUG-DRUG INTERACTIONS

➔ *SPECIAL CONSIDERATIONS: Certain conditions require special consideration when selecting an HCV treatment regimen, including decompensated cirrhosis, chronic kidney disease, solid organ transplant recipients, and pregnancy. These SPECIAL CONDITIONS are addressed in Section 8.*

➔ *COST: The cost of direct acting antiviral (DAA) regimens can vary widely. When more than one regimen is appropriate for an individual case, the most cost-effective regimen is recommended, taking into consideration all the factors listed in the BOX above.*

### DIRECT ACTING ANTIVIRAL MEDICATIONS (DAAs)

As the name implies, these antiviral medications for HCV infection act directly on some part of the virus, usually the replication mechanism.

**Currently, there are three classes of HCV DAAs:** polymerase inhibitors (-buvir), protease inhibitors (-previr), and NS5A replication complex inhibitors (-asvir).

➔ *DAAs cannot be used as monotherapy; they must be used in combination with at least one other DAA or with ribavirin, and in some cases with peginterferon, depending on the clinical scenario.*

➔ *The most commonly recommended regimens are briefly described below. More detailed information about the regimens and the individual medications—including indications, contraindications, dosing and duration, and drug interactions—may be found in the the AASLD guidance, manufacturer's prescribing information, Facts and Comparisons (available in BEMR), and other validated resources.*

### DACLATASVIR + SOFOSBUVIR

- **USE:** Once-daily daclatasvir coadministered with 400 mg of sofosbuvir once daily, with or without food, is FDA-approved for the treatment of **HCV genotype 1 and 3.**
    - ▸ AASLD currently recommends this combination as an option for treatment of **HCV genotypes 1, 2, 3, and 4** in various clinical scenarios **with decompensated cirrhosis.**
    - ▸ If there are no contraindications, ribavirin is added to the regimen in decompensated cirrhosis and in some HCV treatment-experienced cases.
- **DOSING:** The usual dose of daclatasivir is 60 mg once daily, with or without food.
    - ▸ Dosage adjustment is required with strong CYP3A inhibitors (30 mg once daily) and with moderate CYP3A inducers (90 mg once daily).
        - ➔ *Daclatasvir is contraindicated with strong CYP3A inducers (e.g., carbamazepine, phenytoin, and rimamycin antimycobacterials) and is not recommended with amiodarone.*

- ► When coadministered with antiretrovirals for HIV infection—the dose of daclatasvir is decreased to 30 mg with indinavir, nelfinavir, saquinavir, ritonavir-boosted atazanavir, or any cobicistat-containing regimen except darunavir; the dose of daclatasvir is increased to 90 mg with efavirenz, etravirine, or nevirapine.

- • DURATION: The usual duration of treatment is 12 weeks in patients with no cirrhosis,
  - ► Response rates are diminished in cirrhosis; the optimal duration for treatment of HCV with cirrhosis is not well-established, but AASLD recommends longer treatment durations of 16 to 24 weeks, depending on the clinical scenario.

## ELBASVIR/GRAZOPREVIR (ZEPATIER®)

- • FORMULATION/USE: A coformulation of 50 mg of elbasvir (an HCV NS5A inhibitor) and 100 mg of grazoprevir (an HCV NS3 protease inhibitor) is FDA-approved for treatment of **HCV genotypes 1 and 4.**
  - → *In HCV genotype 1a, NS5A resistance testing is recommended prior to treatment, if GFR is ≥30.*

- • DOSING AND DURATION: The usual dose and duration is one tablet orally once daily, with or without food, for 12 weeks.
  - ► 16 weeks is recommended for **HCV genotype 1a** with baseline NS5A polymorphisms or for **HCV genotype 4** treatment-experienced with peginterferon + ribivarin.
  - ► Weight-based ribivirin is added to elbasvir/grazoprevir for the following: **HCV genotype 1a** with baseline NS5A polymorphisms; **HCV genotype 1a or 1b** treatment-experienced with PEG- peginterferon + ribivarin + HCV protease inhibitor; or **HCV genotype 4** treatment-experienced with peginterferon + ribivarin.
  - ► No dosage adjustment is required for decreased renal function or hemodialysis, although the ribavirin dose must be adjusted for GFR < 50.

- • CONTRAINDICATIONS AND USE NOT RECOMMENDED :
  - ► Elbasvir/grazoprevir is contraindicated in decompensated cirrhosis (CTP score ≥ 7), or with certain medications.
  - ► Contraindicated medications include phenytoin, carbamazepine, rifampin, efavirenz, HIV protease inhibitors (atazanavir, darunavir, lopinavir, saquinavir, and tipranavir), and cyclosporine.
  - ► Elbasvir/grazoprevir is not recommended with moderate CYP3A inducers or with strong CYP3A inhibitors.

## GLECAPREVIR/PIBRENTASVIR (MAVYRET®)

- • FORMULATION/USE: A coformulation of 100 mg of glecaprevir and 40 mg of pibrentasvir is FDA-approved for treatment of **HCV genotypes 1, 2, 3, 4, 5, or 6**, without cirrhosis or with compensated cirrhosis (Child-Pugh A). Glecaprevir/pibrentasvir is also indicated for the treatment of adult patients with **HCV genotype 1** infection, previously treated with a regimen containing an HCV NS5A inhibitor or an NS3/4A protease inhibitor, but not both.

- • DOSING AND DURATION: The usual dose is three tablets (total daily dose: glecaprevir 300mg and pibrentasvir 120mg) taken orally, once daily, with food, for treatment-naïve patients. No dosage adjustment is required in patients with mild, moderate, or severe renal impairment,

including those on dialysis. The usual duration of treatment is 12 weeks, except as noted below:

- ► Treatment duration of 8 weeks is recommended for **all genotypes** with no cirrhosis if they are treatment-naïve or treatment-experienced with PEG-IFN + RBV.
- ► Treatment duration of 16 weeks is an AASLD alternative regimen for:
  **1) HCV genotype 1,** without cirrhosis or with compensated cirrhosis (Child-Pugh A), in patients who are treatment-experienced with an NS5A inhibitor without prior treatment with an NS3/4A inhibitor; and
  **2) HCV genotype 3,** without cirrhosis or compensated cirrhosis (Child-Pugh A), in patients who are treatment-experienced with PEG-IFN and RBV, with or without SOF.

- **USES NOT RECOMMENDED:**
  - ► Glecaprevir/ pibrentasvir is not recommended for use with certain medications (e.g., carbamazepine, efavirenz, and St. John's wort).
  - ► Glecaprevir/ pibrentasvir is not recommended for use with moderate hepatic impairment (Child-Pugh B).

- **CONTRAINDICATION:** It is contraindicated with severe hepatic impairment (Child-Pugh C) or with coadministration with atazanavir and rifampin.

- **WARNING:** Risk of Hepatitis B virus reactivation in patients coinfected with HCV and HBV.

## LEDIPASVIR/SOFOSBUVIR (HARVONI®)

- **FORMULATION/USE:** A coformulation of 90 mg of ledipasvir and 400 mg of sofosbuvir is FDA-approved for treatment of **HCV genotypes 1, 4, 5, and 6;** alone or in combination with ribavirin, without or with cirrhosis, compensated or decompensated.

- **DOSING AND DURATION:** The usual dose is one tablet orally once daily, with or without food, for 12 or 24 weeks, depending on the clinical scenario.
  - ► AASLD recommends only an 8-week course of treatment in a subgroup of HCV-infected persons who have **genotype 1a or 1b,** have an HCV viral load <6 million IU/ml, and are treatment-naïve—but who are not black, are not HIV-coinfected, and do not have cirrhosis.

- **USES NOT RECOMMENDED:**
  - ► Ledipasvir/sofosbuvir is not recommended for use with certain anticonvulsants (e.g., carbamazepine, phenytoin, phenobarbital, or oxcarbazepine), certain rifamycin antimycobacterials (e.g., rifabutin, rifampin, or rifapentine), or the antiarrhythmic, amiodarone.
  - ► The dose and safety of ledipasvir/sofosbuvir is unknown in severe renal impairment; it is not recommended by AASLD in CKD with GFR < 30 mL/min/1.73m$^2$.

## PARITAPRAVIR/RITONAVIR/OMBITASVIR/DASABUVIR (VIEKIRA XR™)

- **FORMULATION:** This treatment includes three tablets, each coformulated with 50 mg of paritaprevir, 33.33 mg of ritonavir, 8.33 mg of ombitasvir, and 200 mg tablets of dasabuvir.

- **USE:** This is an FDA-approved treatment of **HCV genotype 1**, alone (for **genotype 1b**) or in combination with ribavirin (for **genotype 1a**).
  - ▸ AASLD also recommends this as a treatment option for **HCV genotype 1b** with CKD and GFR <30 for whom urgent HCV treatment is needed.
- **DOSING AND DURATION:** The usual dose is three tablets once daily with a meal. Duration of treatment is either 12 weeks for **genotype 1a** without cirrhosis, or **genotype 1b** with or without compensated cirrhosis; or 24 weeks for **genotype 1a** with compensated cirrhosis.
- **CONTRAINDICATION:** This treatment is contraindicated for use with decompensated cirrhosis.

### SOFOSBUVIR/VELPATASVIR (EPCLUSA®)

- **FORMULATION/USE:** A coformulation of 400 mg of sofosbuvir and 100 mg of velpatasvir is FDA-approved for treatment of **HCV genotypes 1, 2, 3, 4, 5, and 6,** with no cirrhosis or with compensated cirrhosis, or for decompensated cirrhosis in combination with ribavirin.
- **DOSING AND DURATION:** The usual dose is one tablet orally once daily, with or without food, for 12 weeks.
- **USES NOT RECOMMENDED:**
  - ▸ Sofosbuvir/velpatasvir is not recommended for use with certain anticonvulsants (e.g., carbamazepine, phenytoin, phenobarbital, or oxcarbazepine), certain rifamycin antimycobacterials (e.g., rifabutin, rifampin, or rifapentine), the antiarrhythmic amiodarone, certain antiretrovirals (efavirenz, or tipranavir/ritonavir), or proton pump inhibitors.
  - ▸ The dose and safety of sofosbuvir/velpatasvir is unknown in severe renal impairment; it is not recommended in CKD with GFR < 30 mL/min/1.73m$^2$.
- **CONTRAINDICATION:** If there are contraindicatons to ribavirin, it should not be used in combination with sofosbuvir/velpatasvir.

### SOFOSBUVIR/VELPATASVIR/VOXILAPREVIR (VOSEVI®)

- **FORMULATION/USE:** A coformulation of 400 mg of sofosbuvir, 100 mg of velpatasvir, and 100 mg of voxilaprevir is FDA-approved for treatment of adult patients without cirrhosis or with compensated cirrhosis (Child-Pugh A) with **HCV genotypes 1, 2, 3, 4, 5, or 6,** infections previously treated with a regimen containing an NS5A inhibitor, or **HCV genotypes 1a or 3** infection previously treated with sofosbuvir without an NS5A inhibitor.
- **DOSING AND DURATION:** The usual dose is one tablet (total daily dose: 400 mg of sofosbuvir, 100mg of velpatasvir, and 100mg of voxilaprevir) taken orally, once daily, with food, for 12 weeks for **HCV genotypes 1, 2, 3, 4, 5, or 6** previously treated with an NS5A inhibitor or **HCV genotypes 1a or 3** treated with sofosbuvir without an NS5A inhibitor. A dosage recommendation cannot be made for patients with severe renal impairment or end stage reanl disease.
- **USES NOT RECOMMENDED:**
  - ▸ Not recommended for use with P-gp inducers and/or moderate to potent CYP inducers (e.g., carbamazepine, St. John's wort).

- ► Sofosbuvir/velpatasvir/voxilaprevir is not recommended for use with moderate hepatic impairment (Child-Pugh B).

- **CONTRAINDICATION:** It is contraindicated with severe hepatic impairment (Child-Pugh C) or with coadministration with Rifampin.

- **WARNING:**
  - ► Sofosbuvir/velpatasvir/voxilaprevir is not recommended for use with moderate hepatic impairment (Child-Pugh B).
  - ► Serious bradycardia may occur with amiodarone coadministration, particularly in patients receiving beta blockers, or those with inderlying cardiac comorbidities and/or advanced liver disease. In patients without alternative viable treatment options, cardiac monitoring is recommended.

## SOFOSBUVIR + SIMEPREVIR

- **DOSING/DURATION/USE:** Taken together once daily, 400 mg of sofosbuvir and 150 mg of simeprevir, for 12 weeks in patients with no cirrhosis.
  - ► When used as an alternative regimen to treat patients with compensated cirrhosis, the duration is extended to 24 weeks, with or without ribavirin.
  - ► This combination is FDA-approved for treatment of **HCV genotype 1.**
    - → *When used for the treatment of **HCV genotype 1a** with cirrhosis, a test for HCV NS3 virologic resistance looking for the Q80K polymorphism must be obtained prior to treatment.*

## PREFERRED TREATMENT REGIMENS

*The preferred treatment regimens currently recommended by AASLD/IDSA are included in this BOP guidance in the following appendices:*

- *Appendix 1, Treatment Recommendations for HCV with Compensated Cirrhosis*
- *Appendix 2, Treatment Recommendations for HCV with No Cirrhosis*
- → *Please refer to the AASLD/IDSA website (www.hcvguidelines.org) for any updates since September 21, 2017.*

**ALTERNATIVE TREATMENT REGIMENS:** The AASLD/IDSA guidance includes recommendations for some regimens that are not specifically FDA-approved and also describe alternative treatment regimens for situations in which a preferred regimen is not an option. These alternative regimens are not included in this BOP guidance, but can be considered on a case-by-case basis.

## POTENTIAL DRUG INTERACTIONS

In addition to the genotype, prior HCV treatment history, and status of hepatic compensation, as noted above, it is essential to review each treatment candidate for potential drug interactions prior to selecting the most appropriate regimen for HCV treatment. Adjustments of the inmate's current medications may be needed prior to starting treatment for HCV. Refer to the appendices at the end of this document for specific drug interactions. Other useful resources for potential drug interactions include the AASLD/IDSA guidance, the individual manufacturers' prescribing information, and the DHHS Guidelines for the Use of Antiretroviral Agents in HIV-1-Infected Adults and Adolescents.

## REGIMENS NOT RECOMMENDED

**Regimens that are not recommended for use include the following:**

- Monotherapy with peginterferon, ribavirin, or any of the DAAs.

- Dual therapy with peginterferon and ribavirin, except when urgent HCV treatment is needed for **genotypes 2, 3, 5, or 6** with GFR < 30.
  - → *See discussion of chronic kidney disease in Section 8.*

- Triple therapy with peginterferon, ribavirin, and the HCV protease inhibitors boceprevir, simeprevir, or telaprevir.

- HCV protease inhibitors for **genotypes 2, 3, 5, or 6** (paritaprevir, simeprevir).

## 7. MONITORING

→ *See Appendix 3, Hepatitis C Treatment Monitoring Schedule, for a summary chart of the monitoring recommendations.*

## PRETREATMENT ASSESSMENT

**Prior to starting treatment for HCV infection, PATIENT EDUCATION is recommended**—including, but not limited to: how to take the medication, the importance of adherence, monitoring and follow up, and potential medication side effects. When ribavirin is used, specific counseling about the risks and recommendations related to pregnancy should be provided.

**Pretreatment assessment should be accomplished within three months of the projected start of treatment, and should include the following:**

- **Laboratory tests** including CBC, PT/INR, liver panel, serum creatinine, calculated GFR.
  - → *Obtain quatitative HCV RNA viral load and HCV genotype if the most recent results are more than one year old or if not previously performed.*
  - → *A urine drug screen is not required as part of the pretreatment evaluation, and is recommended only if ongoing substance use is suspected or if it is otherwise clinically indicated.*

- **Calculation of the APRI score** using results from the pretreatment labs. (An APRI score is not needed if there is confirmed cirrhosis.)

- **Calculation of current CTP score** for inmates with known or suspected cirrhosis.

- **Assessment for significant drug-drug interactions.**

- **Assessment for current/prior medication adherence.**

- **Review of incident report history** for high-risk behaviors (alcohol/drug possession/use; tattooing).

- **For ribavirin-containing regimens:** In addition to the above, obtain a pregnancy test in all women with childbearing potential. A pretreatment ECG is recommended for inmates with preexisting coronary heart disease.

- **For interferon-containing regimens:** In addition to the above, pretreatment evaluation should include a WBC with differential, TSH/free T4. Such regimens should also include a mental health evaluation.

*Testing for NS5A resistance-associated substitutions (RASs) is recommended prior to treatment with the following regimens or situations:*

- Elbasvir/grazoprevir for **HCV genotype 1a and GFR ≥30.**
- Sofosbuvir/velpatasvir for treatment-naïve **HCV genotype 3** with cirrhosis.
- Sofosbuvir/velpatasvir for **HCV genotype 3** treatment-experienced with PEG-IFN + RBV and no cirrhosis.
- Daclatasvir + sofosbuvir as an alternative regimen for treatment-naïve **HCV genotype 3** with cirrhosis.
- Daclatasvir + sofosbuvir as an alternative regimen for **HCV genotype 3** treatment-experienced with PEG-IFN + RBV, and no cirrhosis.
- NS5A resistance testing may be considered when ledipasvir/sofosbuvir is an option for treatment-experienced **HCV genotype 1a** with no cirrhosis or compensated cirrhosis.
  → *NS3/4A resistance testing is no longer routinely recommended.*

## ON-TREATMENT MONITORING

*On-treatment monitoring should include the following:*

- **An outpatient clinic visit at 2 weeks and at 4 weeks** after starting therapy, and monthly thereafter; more frequently as clinically indicated.
  - ▶ The primary focus at the 2-week visit is assessment of medication adherence, side effects and symptoms of hepatic decompensation, adverse drug reactions, and drug–drug interactions.
- **Labs drawn at 4 weeks** after the start of therapy should include CBC, serum creatinine, calculated GFR, liver panel including ALT, and quantitative HCV viral load sensitive to ≤ 25 IU/ml; others as clinically indicated.
  - ▶ **For regimens containing interferon and/or ribavirin:** A CBC should also be drawn 2 weeks after starting therapy, then at 4 weeks, then monthly; more frequently as clinically indicated. Interferon and/or ribavirin dosage adjustments may be required.
    - → See *Appendix 4. Management of Hematologic Changes*.
  - ▶ **More frequent monitoring of ALT is necessary in certain situations:**
    - **Regimens containing elbasvir/grazoprevir:** For 12-week regimens, a liver panel including ALT should be drawn at 4 weeks and again at 8 weeks, and as clinically indicated. For 16-week regimens, a liver panel including ALT should be drawn at 4 weeks and again at 12 weeks.
    - **Patients with compensated cirrhosis** who are treated with paritaprevir/ritonavir/ombitasvir (with or without dasabuvir) require monitoring by a liver panel—including ALT and signs of decompensated liver disease—at 2 weeks, 4 weeks, and as clinically indicated.
    - **Increases in the ALT should prompt more frequent monitoring or early discontinuation.** Asymptomatic ALT increases of less than tenfold should be monitored approximately every 2 weeks. Early discontinuation of HCV treatment is recommended if ALT increases by tenfold—or if less than tenfold, but accompanied by *symptoms* such as weakness, anorexia, nausea, vomiting, or change in stool color, or *signs* including

elevations in conjugated bilirubin, alkaline phosphatase, and INR, related to hepatic dysfunction.

 ▸ **If the quantitative HCV viral load is detectable after 4 weeks of treatment**, it should be repeated 2 weeks later. Early discontinuation of HCV treatment is recommended only if there is > 1 log increase from the nadir in HCV viral load after 6 weeks or more of treatment.

   ➔ *HCV viral load testing is no longer required at the end of treatment, but should be obtained in all cases that failed to achieve undetectable levels during treatment.*

- **A test for thyroid stimulating hormone (TSH)** is recommended every 12 weeks only for patients receiving regimens containing interferon. For a 12-week regimen, a TSH should be drawn at the end of treatment, in addition to the pretreatment baseline.

- **Pregnancy testing is required prior to treatment with ribavirin-containing regimens**, and then periodically during and after treatment—usually monthly during treatment and for 6 months after completion of treatment.

- **Monitoring of interferon and/or ribavirin-containing regimens** has not changed and is included in *Appendix 3. Hepatitis C Treatment Monitoring Schedule*.

- **For patients with evidence of chronic HBV infection (i.e., HBsAg positive) who do not meet criteria for antiviral HBV therapy**, quantitative HBV DNA levels are recommended prior to starting HCV DAA treatment, periodically during DAA treatment (usually every four weeks), and immediately after DAA treatment. Initiate antiviral HBV treatment if the HBV DNA level increases more than 10-fold from baseline or above 1,000 IU/ml if it was previously undetectable.

## POST-TREATMENT MONITORING

- A quantitative HCV RNA viral load assessment is recommended at 12 weeks after completion of treatment; if HCV is undetectable, it defines a sustained virologic response (SVR).

- If the HCV viral load is again undetectable at 6 to 12 months after the end of treatment, the inmate may be removed from the chronic care clinic for this condition, so long as he or she has no cirrhosis, complications, or related comorbidities, and the HCV infection has been changed to "resolved" in the problem list.

➔ *Recurrent viremia following an SVR may be due to relapse or reinfection. To help distinguish between the two in such cases, an HCV genotype, along with subtyping for genotype 1, should be obtained. If the post-SVR genotype is the same as the pre-treatment genotype, it is not possible to distinguish relapse from reinfection.*

## ONGOING MONITORING

***Periodic monitoring is recommended for all those with active infection***, including acute HCV infection, HCV treatment failures, relapse of HCV infection or reinfection, and those with chronic HCV infection who are not yet treated.

- **For cases without advanced fibrosis, cirrhosis, or complications**, annual evaluation is appropriate. This evaluation should include a focused review of systems and patient education relevant to HCV, vital signs and a focused physical examination, and lab monitoring (CBC, PT/INR, liver panel, serum creatinine, calculated GFR, and calculation of the APRI score).

- **For patients with cirrhosis or significant comorbidities,** evaluation is recommended at least every six months; more frequently as clinically indicated.

- **In cases of acute HCV infection,** monitoring for spontaneous clearance of the infection with ALT and quantitative HCV RNA levels every four to eight weeks, for six to twelve months, is recommended. If viremia persists after that time, continue to monitor and manage the case as a chronic infection. In most cases of acute HCV infection, treatment may be deferred to allow for spontaneous clearance of viremia. However, in some cases there may be a compelling reason to treat the acute infection in order to prevent severe complications, e.g., HCV infection superimposed on established cirrhosis or advanced fibrosis.

## 8. SPECIAL CONSIDERATIONS

### HCV INFECTION WITH MORE THAN ONE GENOTYPE

Very little data are available to guide the selection of a DAA regimen when more than one HCV genotype are present at the same time. In such cases, selection of a regimen that is effective against both of the existing genotypes is appropriate, in consultation with a BOP Hepatitis Clinical Pharmacy Consultant or Central Office Physician.

### HBV COINFECTION

In patients coinfected with HBV and HCV, HBV reactivation may occur during or after treatment with HCV DAAs. Testing for HBV infection—including HBsAg, anti-HBs, and anti-HBc, as well as HBV DNA levels in those with a reactive HBsAg—is recommended for all patients being considered for treatment of HCV infection.

- **If criteria for treatment of HBV are met,** it is recommended that HBV treatment be started prior to or at the same time as HCV treatment, and monitored according to HBV treatment guidance.

- **If criteria for treatment of HBV infection are NOT met,** monitoring of HBV DNA every 4 weeks during HCV treatment is recommended. Initiate antiviral HBV treatment if the HBV DNA level increases more than 10-fold from baseline or above 1,000 IU/ml if it was previously undetectable.

### HIV COINFECTION

Currently recommended HCV regimens are equally effective for HCV mono-infection and coinfection with HIV. However, an alternative HCV regimen or an alternative antiretroviral medication regimen may be necessary due to potential drug interactions between the HCV DAAs and certain antiretrovirals.

**The following are links to tables showing drug interactions between the HIV antiretrovirals and the HCV Direct Acting Antivirals (DAAs):**

- *https://aidsinfo.nih.gov/guidelines/htmltables/1/5536 (Table 12)*
- *https://www.hcvguidelines.org/unique-populations/hiv-hcv (scroll to the bottom of the page)*

## DECOMPENSATED CIRRHOSIS

**Treatment of HCV patients with decompensated cirrhosis should be managed in consultation with an experienced clinician/specialist, with treatment requests considered on a case-by-case basis.** HCV treatment recommendations for patients with decompensated cirrhosis apply regardless of eligibility for a liver transplant or the presence of hepatocellular carcinoma. The regimens and other considerations are listed below. Inmates with decompensated cirrhosis and a CTP score $\geq 9$ may meet reduction in sentence criteria

→ *See TABLE 2 below for a summary of treatment recommendations for decompensated cirrhosis.*

**HCV GENOTYPE 1, 4, 5, OR 6 WITH DECOMPENSATED CIRRHOSIS:**

→ *See the section below that discusses the use of ribavirin with this group.*

- **The treatment options for HCV genotype 1, 4, 5, or 6 with decompensated cirrhosis, either treatment-naïve or treatment-experienced with peginterferon+ribivarin, are as follows:**
  - Ledipasvir/sofosbuvir + low initial dose ribavirin for 12 weeks (or ledipasvir/sofosbuvir for 24 weeks in ribavirin-ineligible cases)
  - Sofosbuvir/velpatasvir + ribavirin for 12 weeks (or sofosbuvir/velpatasvir for 24 weeks in ribavirin-ineligible cases)
  - **Genotypes 1 or 4 only:** Daclatasvir + sofosbuvir + low initial dose ribavirin for 12 weeks (or daclatasvir + sofosbuvir for 24 weeks in ribavirin-ineligible cases)

- **For cases with a history of treatment failure with a regimen containing sofosbuvir, one of the the following two regimens is recommended:**
  - Ledipasvir/sofosbuvir + low initial dose ribavirin for 24 weeks
  - Sofosbuvir/velpatasvir + ribavirin for 24 weeks

- **For cases with a history of treatment failure with a regimen containing an NS5A inhibitor, the following regimen is recommended:**
  - Sofosbuvir/velpatasvir + ribavirin for 24 weeks

**HCV GENOTYPE 2 OR 3 WITH DECOMPENSATED CIRRHOSIS:**

→ *See the section below that discusses the use of ribavirin with this group.*

- **The treatment options for HCV genotype 2 or 3 with decompensated cirrhosis, either treatment-naïve or treatment-experienced with peginterferon+ribivarin, are as follows:**
  - Once-daily daclatasvir + once-daily sofosbuvir + low initial dose of ribavirin for 12 weeks (or daclatasvir + sofosbuvir for 24 weeks in ribavirin-ineligible cases)
  - Once-daily sofosbuvir/velpatasvir + ribavirin for 12 weeks (or sofosbuvir/velpatasvir for 24 weeks in ribavirin-ineligible cases)

- **For cases with a history of treatment failure with a regimen containing sofosbuvir or an NS5A inhibitor, the following regimen is recommended:**
  - Sofosbuvir/velpatasvir + ribavirin for 24 weeks.

### USE OF RIBAVIRIN IN RIBAVRIN-ELIGIBLE CASES WITH DECOMPENSATED CIRRHOSIS

- **When used with ledipasvir/sofosbuvir *or* daclatasvir + sofosbuvir,** the initial dose of ribavirin should be a total daily dose of 600 mg, in divided doses twice daily, increasing to a full weight-based regimen as tolerated (RBV-LD).

- **For use with sofosbuvir/velpatasvir,** AASLD indicates that a full weight-based ribavirin dose may be started in cases with CTP Class B decompensated cirrhosis, while the low initial dose (described in the above bullet) is used in cases with CTP Class C.

- **Ribavirin dosage adjustments may be required for inmates with low GFR or hemoglobin levels.**

### CONTRAINDICATIONS FOR CTP CLASSES B AND C:

- Elbasvir/grazoprevir is contraindicated in decompensated cirrhosis with CTP scores $\geq 7$ (CTP class B or C).

- Interferon-containing regimens are contraindicated in decompensated cirrhosis.

- The use of paritaprevir/ritonavir/ombitasvir/dasabuvir is contraindicated with severe hepatic impairment (CTP class C) and is not recommended in CTP class B.

- Simeprevir is not recommended for use in decompensated cirrhosis with CTP class B or C.

### TABLE 2: HCV TREATMENT RECOMMENDATIONS FOR DECOMPENSATED CIRRHOSIS

| TREATMENT HISTORY | GENOTYPE | | |
|---|---|---|---|
| | 1 OR 4 | 2 OR 3 | 5 OR 6 |
| TN or TE with PEG-IFN + RBV (*RBV eligible*) | LDV/SOF + RBV-LD: 12 wks<br>SOV/VEL + RBV*: 12 wks<br>DCV + SOF + RBV-LD: 12 wks | DCV + SOF + RBV-LD: 12 wks<br>SOV/VEL + RBV*: 12 wks | LDV/SOF + RBV-LD: 12 wks<br>SOV/VEL + RBV*: 12 wks |
| TN or TE with PEG-IFN + RBV (*RBV ineligible*) | LDV/SOF: 24 wks<br>SOV/VEL: 24 wks<br>DCV + SOF: 24 wks | DCV + SOF: 24 wks<br>SOV/VEL: 24 wks | LDV/SOF: 24 wks<br>SOV/VEL: 24 wks |
| TE with SOF (*RBV eligible*) | LDV/SOF + RBV-LD: 24 wks<br>SOV/VEL + RBV*: 24 wks | SOF/VEL + RBV*: 24 wks | LDV/SOF + RBV-LD: 24 wks<br>SOV/VEL + RBV*: 24 wks |
| TE with NS5A (*RBV eligible*) | SOV/VEL + RBV*: 24 wks | SOF/VEL + RBV*: 24 wks | SOV/VEL + RBV*: 24 wks |

ABBREVIATIONS: See *GLOSSARY*.

* A full weight-based ribavirin dose may be started in cases with CTP Class B decompensated cirrhosis, while low initial dose is used in cases with CTP Class C.

## LIVER TRANSPLANT RECIPIENTS

→ See TABLE 3 below for a summary of HCV treatment recommendations for liver transplant recipients.

### HCV GENOTYPE 1, 4, 5, OR 6 IN LIVER TRANSPLANT RECIPIENTS:

Recommended regimens for HCV genotype 1, 4, 5, or 6 in liver transplant recipients with ongoing or recurrent HCV infection—either treatment-naïve or treatment-experienced—are determined by the absence or presence of cirrhosis in the allograft, as described below.

→ Alternative regimens are described in the AASLD guidance.

- **No cirrhosis in the allograft:**
  - ► Glecaprevir/pibrentasvir once daily for 12 weeks or
  - ► Ledipasvir/sofosbuvir once daily + weight based ribavirin twice daily for 12 weeks
- **Compensated cirrhosis in the allograft:**
  - ► Ledipasvir/sofosbuvir once daily + weight based ribavirin twice daily for 12 weeks
- **Decompensated cirrhosis in the allograft:**
  - ► Ledipasvir/sofosbuvir once daily + low initial dose ribavirin twice daily for 12 weeks

### HCV GENOTYPE 2 OR 3 IN LIVER TRANSPLANT RECIPIENTS:

Recommended regimens for HCV genotype 2 or 3 in liver transplant recipients with ongoing HCV infection—either treatment-naïve or treatment-experienced—are determined by the absence or presence of cirrhosis in the allograft, as follows:

- **No cirrhosis in the allograft:**
  - ► Glecaprevir/pibrentasvir once daily for 12 weeks or
  - ► Ledipasvir/sofosbuvir once daily + weight-based ribavirin twice daily for 12 weeks
  - ► Ledipasvir/sofosbuvir once daily + low initial dose ribavirin twice daily for 12 weeks **for treatment-naïve or treatment-experienced patient with decompensated cirrhosis.**
- **Compensated cirrhosis in the allograft:**
  - ► Ledipasvir/sofosbuvir once daily + weight based ribavirin twice daily for 12 weeks
- **Decompensated cirrhosis in the allograft:**
  - ► Ledipasvir/sofosbuvir once daily + low initial dose ribavirin twice daily for 12 weeks

### TABLE 3: HCV TREATMENT RECOMMENDATIONS FOR HCV IN LIVER TRANSPLANT RECIPIENTS

| HCV TREATMENT RECOMMENDATIONS FOR ONGOING/RECURRENT HCV IN LIVER TRANSPLANT RECIPIENTS (TREATMENT-NAÏVE OR EXPERIENCED) | | |
|---|---|---|
| **STAGE OF FIBROSIS IN ALLOGRAFT** | **GENOTYPE** | |
| | **1, 4, 5, OR 6** | **2 OR 3** |
| No cirrhosis | GLE/PIB: 12 wks<br>LDV/SOF + RBV-WB: 12 wks | GLE/PIB: 12 wks<br>DCV + SOF + RBV-LD: 12 wks |
| Compensated cirrhosis | LDV/SOF + RBV-WB: 12 wks | DCV + SOF + RBV-LD: 12 wks |
| Decompensated cirrhosis | LDV/SOF + RBV-LD: 12 wks | DCV + SOF + RBV-LD: 12 wks<br>VEL/SOF + RBV*: 12 wks |

ABBREVIATIONS: See GLOSSARY.
*A full weight-based ribavirin dose may be started in cases with CTP Class B decompensated cirrhosis, while low initial dose is used in cases with CTP Class C.

→ Refer to the following table for DAA drug interactions with calcinueurin inhibitors (cyclosporine, tacrolimus): https://www.hcvguidelines.org/unique-populations/post-liver-transplant (scroll to bottom of the page)

## CHRONIC KIDNEY DISEASE (CKD)

HCV is independently associated with the development of chronic kidney disease (CKD). Published studies indicate that HCV is associated with 1) a higher risk of developing proteinuria and CKD; 2) a higher risk for progression to end-stage-liver-disease (ESLD); and 3) an increased risk of mortality for dialysis patients.

***No dosage adjustment is required for any of the current DAAs when the GFR is ≥ 30 (CKD stages 1, 2, and 3).*** For cases being considered for renal transplantation, consultation with the transplant consultant is recommended regarding timing of HCV treatment relative to transplantation.

- **For patients with GFR < 30 (CKD stages 4 and 5), and any HCV genotype**—either with no cirrhosis or with compensated cirrhosis, and either treatment-naïve or treatment-experienced—the recommended DAA treatment regimens are as follows:
    - **Glecaprevir/pibrentasvir once daily for 8 to 16 weeks may be used for all genotypes,** Duration of treatment is the same as for those without CKD. No dosage adjustment is required.
    - **Elbasvir/grazoprevir once daily for 12 weeks may be used ONLY for genotypes 1a, 1b, or 4.** It appears NOT to be a good choice for most DAA-experienced cases. No dosage adjustment is required. NS5A resistance testing is not required when elbasvir/grazoprevir is used to treat genotype 1a with a GFR < 30.
        - → *See discussion of elbasvir/grazoprevir in Section 6.*
- **Ribavirin doses must be decreased with GFRs ≤50.** For GFRs 30–50, ribavirin is dosed 200 mg alternating every other day with 400 mg. For GFR <30, including hemodialysis, the ribavirin dose is 200 mg daily.
- **For kidney transplant recipients with HCV genotype 1 or 4** with no cirrhosis or with compensated cirrhosis, either treatment-naïve or treatment-experienced, glecaprevir (300mg) / pibrentasvir (120mg) or ledipasvir (90mg) / sofosbuvir (400mg), once daily for 12 weeks are the preferred DAA regimens. No dosage adjustments are required.
- **For kidney transplant recipients with HCV genotype 2, 3, 5, or 6** with no cirrhosis or with compensated cirrhosis, either treatment-naïve or treatment-experienced, glecaprevir (300mg) / pibrentasvir (120mg) is the preferred DAA regimen. No dosage adjustment is required.

## PREGNANCY

Data are limited on the efficacy of HCV DAAs during pregnancy as well as the reproductive and fetal effects of HCV DAAs in humans. Although the FDA lists the current HCV DAAs as Pregnancy Category B (i.e., no evidence of risk), based on studies using animal reproduction models, the current AASLD/IDSA guidance does NOT recommend treatment of HCV during pregnancy.

**Ribavirin (Pregnancy Category X) is contraindicated.** Although interferon is Pregnancy Category C (i.e., risk cannot be ruled out), it is usually combined with ribavirin, which is contraindicated.

- Women of childbearing potential who are being considered for an HCV regimen that includes ribavirin should be counseled on the adverse fetal effects of ribavirin. They should be advised

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

not to become pregnant during treatment with ribavirin *and* for six months after the treatment has ended. They should also be advised that the same risks apply if a male sex partner is being treated with ribavirin.

> ➔ *A negative pregnancy test should be documented prior to starting treatment with ribavirin, monthly during treatment, and for six months after treatment.*

- Men being treated with ribavirin should also be counseled on the adverse fetal effects of ribavirin. They should be advised not to cause pregnancy in their female sex partners during treatment with ribavirin *and* for six months after the treatment has ended.

*Federal Bureau of Prisons*
*Clinical Guidance*

*Evaluation and Management of Chronic HCV Infection*
*January 2018*

## REFERENCES

AASLD/IDSA. Recommendations for testing, managing, and treating hepatitis C. *http://www.hcvguidelines.org/*. Updated September 21, 2017. Accessed January 2018.

➜ *Please refer to the AASLD/IDSA website (www.hcvguidelines.org) for any updates since September 21, 2017.*

*Note about the website: To provide healthcare professionals with timely guidance as new therapies are available and integrated into HCV regimens, the American Association for the Study of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA), have developed a web-based process for the rapid formulation and dissemination of evidence-based, expert-developed recommendations for hepatitis C management.*

Guidelines for the Use of Antiretroviral Agents in HIV-1-Infected Adults and Adolescents. *https://aidsinfo.nih.gov/guidelines*. Updated October 17, 2017. Accessed January 2018

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| AASLD | American Association for the Study of Liver Diseases |
| ALT | alanine aminotransferase |
| ANA | antinuclear antibody |
| APRI | AST to Platelet Ratio Index |
| AST | aspartate aminotransferase |
| CBC | complete blood count |
| CTP score | Child-Turcotte-Pugh score |
| DAA | direct acting antiviral medication |
| DCV | daclatasvir |
| EGD | esophagogastroduodenoscopy |
| EBR | elbasvir |
| GFR | glomerular filtration rate |
| GLE | glecaprevir |
| GZR | grazoprevir |
| HBV | hepatitis B virus |
| HBsAg | hepatitis B surface antigen |
| HCC | hepatocellular carcinoma |
| HCV | hepatitis C virus |
| HIV Ab or anti-HIV | HIV antibody |
| IDSA | Infectious Diseases Society of America |
| INR | International Normalization Ratio |
| LDV | ledipasvir |
| NASH | nonalcoholic steatohepatitis |
| PEG-IFN | pegylated interferon, peginterferon |
| PI | protease inhibitor |
| PIB | pibrentasvir |
| PrO | paritaprevir/ritonavir/ombitasvir |
| PrOD | paritaprevir/ritonavir/ombitasvir/dasabuvir |
| PT | prothrombin time |
| RAS | resistance-associated substitution |
| RBV | ribavirin |
| RBV-LD | ribavirin low initial dose |
| SOF | sofosbuvir |
| SMV | simprevir |
| SVR | sustained virologic response |
| TE | treatment-experienced |
| TN | treatment-naïve |
| TSH | thyroid stimulating hormone |
| ULN | upper limit of normal |
| VEL | velpatasvir |
| VOX | voxilaprevir |

## APPENDIX 1. TREATMENT OPTIONS FOR HCV GENOTYPES 1, 4, 5, AND 6[A,B,C]

| CONDITION | TREATMENT OPTIONS BY HCV GENOTYPE[D] | | | |
|---|---|---|---|---|
| | GENOTYPES 1A AND 1B[E,F,G] | | GENOTYPE 4 | |
| | NO CIRRHOSIS | COMPENSATED CIRRHOSIS | NO CIRRHOSIS | COMPENSATED CIRRHOSIS |
| Treatment-Naïve | ► EBR/GZR: 12 wks<br>► GLE/PIB: 8 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks | ► EBR/GZR: 12 wks<br>► GLE/PIB: 12 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks | ► EBR/GZR: 12 wks<br>► GLE/PIB: 8 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks | ► EBR/GZR: 12 wks<br>► GLE/PIB: 12 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks |
| Treatment-Experienced w/ PEG-IFN + RBV | ► EBR/GZR: 12 wks<br>► GLE/PIB: 8 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks | ► EBR/GZR: 12 wks<br>► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks | ► EBR/GZR: 12 wks<br>► GLE/PIB: 8 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks | ► EBR/GZR: 12 wks<br>► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks |
| Treatment-Experienced w/ PI + PEG-IFN + RBV | ► GLE/PIB: 12 wks<br>► LDV/SOF: 12 wks<br>► SOF/VEL: 12 wks | ► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks | NA | NA |
| Treatment-Experienced w/ SOF + RBV + PEG-IFN OR SOF + PI +/-RBV | ► GLE/PIB: 12 wks (1a or 1b)<br>► SOF/VEL/VOX: 12 wks (1a)<br>► SOF/VEL: 12 wks (1b) | ► GLE/PIB: 12 wks (1a or 1b)<br>► SOF/VEL/VOX: 12 wks (1a)<br>► SOF/VEL: 12 wks (1b) | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks |
| Treatment-Experienced w/ NS5A inhibitor | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks |

A. All regimens in this Appendix are identified as RECOMMENDED in the AASLD guidance. Alternative regimens may be appropriate in some cases, but are not included in this table. Some AASLD recommended regimens are not FDA-approved, but are based on available evidence.

B. Choice of regimen is determined by HCV genotype, treatment history, presence of compensated cirrhosis or no cirrhosis, and resistance-associated substitutions; it is also influenced by potential drug interactions and cost.

C. Recommendations in this table may not be appropriate in decompensated cirrhosis, chronic kidney disease with GFR < 30, liver or kidney transplant recipients. Refer to the specific sections in this guidance for treatment of HCV in these settings.

D. Genotypes 5 and 6, with compensated or no cirrhosis: GLE/PIB (no cirrhosis–8wks; cirrhosis–12 wks), LDV/SOF or SOF/VEL once daily are recommended for treatment-naïve patients or patients who previously failed treatment with PEG-IFN + RBV. Duration of GLE/PIB is 8 weeks in patients without cirrhosis; all other regimens are for 12 weeks. SOF/VEL/VOX once daily for 12 weeks is recommended for DAA-experienced patients with compensated or no cirrhosis.

E. NS5A resistance testing is recommended prior to treatment with EBR/GZR for all genotype 1a cases, except those with GFR < 30 or with end stage renal disease. A regimen of EBR/GZR alone is recommended only for cases with no RASs on NS5A resistance testing. If a RAS is present in genotype 1a, RBV is added to ELB/GZR for a 16 week duration. Refer to the AASLD guideline on monitoring for specific substitutions associated with resistance.

   NS5A resistance testing also may be considered for treatment-experienced genotype 1a cases with or without cirrhosis being considered for LDV/SOF: Resistance levels of 100-fold or less are required to use LDV/SOF in these situations.

F. EBR/GZR alone is NOT to be used in genotype 1a with certain NS5A RASs and GFR ≥ 30. HCV virologic resistance testing is required prior to treatment with EBR/GZR for all genotype 1a cases, except those with GFR < 30 or end stage renal disease. A regimen of EBR/GZR alone is recommended only for cases with no RASs on NS5A resistance testing. If a RAS is present in genotype 1a, RBV is added to ELB/GZR for a 16-week duration. Refer to the AASLD guideline on monitoring for the specific substitutions associated with resistance.

G. An 8-week regimen with LDV/SOF is AASLD-recommended for treatment-naïve genotype 1a with an HCV viral load <6 million IU/ml—but who are not black or HIV-coinfected, and who do not have cirrhosis.

MEDICATIONS:
   DCV = daclatasvir; EBR/GZR=elbasvir/grazoprevir; GLE/PIB = glecaprevir/pibrentasvir (Mavyret™);
   LDV/SOF = ledipasvir/sofosbuvir (Harvoni ®); PEG-IFN = pegylated interferon (peginterferon);
   PI = protease inhibitor (boceprevir, telaprevir, simeprevir); PrO = paritaprevir/ritonavir/ombitasvir;
   PrOD = paritaprevir/ritonavir/ ombitasvir/dasabuvir (Viekira XR™); RBV = ribavirin; SMV = simprevir; SOF = sofosbuvir;
   SOF/VEL = sofosbuvir/velpatasvir (Epclusa®); SOF/VEL/VOX = sofosbuvir/velpatasvir/voxilaprevir (Vosevi®)

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

## APPENDIX 2. TREATMENT OPTIONS FOR HCV GENOTYPES 2 AND 3 [A,B,C]

| CONDITION | TREATMENT OPTIONS BY HCV GENOTYPE | | | |
|---|---|---|---|---|
| | GENOTYPE 2 | | GENOTYPE 3 [D] | |
| | NO CIRRHOSIS | COMPENSATED CIRRHOSIS | NO CIRRHOSIS | COMPENSATED CIRRHOSIS |
| Treatment-Naïve | ► GLE/PIB: 8 wks<br>► SOF/VEL: 12 wks | ► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks | ► GLE/PIB: 8 wks<br>► SOF/VEL: 12 wks | ► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks |
| Treatment-Experienced w/ PEG-IFN + RBV | ► GLE/PIB: 8 wks<br>► SOF/VEL: 12 wks | ► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks | ► SOF/VEL: 12 wks | ► EBR/GZR + SOF: 12 wks<br>► SOF/VEL/VOX: 12 wks |
| Treatment-Experienced w/ SOF + RBV +/- PEG-IFN | ► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks | ► GLE/PIB: 12 wks<br>► SOF/VEL: 12 wks | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks |
| Treatment Experienced w/ SOF + NS5A Inhibitor | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX: 12 wks | ► SOF/VEL/VOX + RBV: 12 wks |

A. All regimens in this Appendix are identified as *RECOMMENDED* in the AASLD guidance. Alternative regimens may be appropriate in some cases, but are not included in this table. Some AASLD recommended regimens are not FDA-approved, but are based on available evidence.

B Choice of regimen is determined by HCV genotype, treatment history, presence of compensated cirrhosis or no cirrhosis, and resistance-associated substitutions; it is also influenced by potential drug interactions and cost.

C. Recommendations in this table may not be appropriate in cases of decompensated cirrhosis, chronic kidney disease with GFR <30, or liver or kidney transplant recipients. Refer to the specific sections in this guidance for treatment of HCV in these settings.

D. NS5A resistance testing is recommended for genotype 3 cases, either treatment-naïve with cirrhosis or treatment-experienced with PEG-IFN+RBV and no cirrhosis, that are being considered for DCV + or SOF. If the Y93H RAS is present, the addition of weight-based RBV to a regimen of either is recommended or a different DAA regimen should be selected, if appropriate.

*MEDICATIONS:*

*DCV* = daclatasvir; *EBR/GZR*=elbasvir/grazoprevir; *GLE/PIB* = glecaprevir/pibrentasvir (Mavyret™);
*LDV/SOF* = ledipasvir/sofosbuvir (Harvoni ®); *PEG-IFN* = pegylated interferon (peginterferon);
*PI* = protease inhibitor (boceprevir, telaprevir, simeprevir); *PrO* = paritaprevir/ritonavir/ombitasvir;
*PrOD* = paritapravir/ritonavir/ ombitasvir/dasabuvir (Viekira XR™); *RBV* = ribavirin; *SMV* = simprevir; *SOF* = sofosbuvir;
*SOF/VEL* = sofosbuvir/velpatasvir (Epclusa®); *SOF/VEL/VOX* = sofosbuvir/velpatasvir/voxilaprevir (Vosevi®)

27

## APPENDIX 3. HEPATITIS C TREATMENT MONITORING SCHEDULE

| Evaluation[1] | Baseline (anti-HCV positive) | Pretreatment (Within 90 days of Tx) | On-Treatment Monitoring (by week of treatment)[2] | | | | | | | 12 wks post-treatment | 6–12 mos post-treatment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2 | 4 | 8 | 12 | 16 | 20 | 24 | | |
| Clinician evaluation | X | X | X | X | X | X | X | X | X | X | X |
| HIV Ab, HBV Serology[3], Anti-HAV (IgG) | X | | | | | | | | | | |
| Prothrombin Time / INR | X | X | | | | | | | | | |
| CBC | X | X | X | X | | | | | | | |
| Serum creatinine + eGFR | X | X | | X | As clinically indicated [4] | | | | | X | X |
| ALT, AST, bilirubin, alkaline, phosphatase, albumin | X | X | | X | | | | | | | |
| APRI & CTP scores[5] | X | X | | | | | | | | | |
| HCV RNA, quantitative [6] | X | X | | X | See footnote #6. | | | | | X | X |
| HCV genotype | X | | | | | | | | | | |
| Assess for drug-drug interactions & adherence | | X | At each clinician evaluation during treatment. | | | | | | | | |
| Review incident report history for high risk behavior (alcohol / drug possession / use; tattooing) | | X | If indicated. | | | | | | | | |
| Urine pregnancy test [7] (if childbearing potential) | | X | | X | X | X | X | X | X | monthly x 6 mos | |

1  Conduct further diagnostic evaluations as clinically warranted to identify other potential causes of the patient's liver disease such as hemochromatosis, Wilson's disease, or autoimmune hepatitis (e.g., serum iron, serum copper, ANA/ ESR). If any of these conditions are diagnosed or strongly suspected, a pre-treatment liver biopsy should be considered.

2  More frequent monitoring may be required if clinically indicated.

3  **Recommended baseline testing for hepatitis B status includes HBsAg, anti-HBs, and anti-HBc.** If either HBsAg or anti-HBc is positive, obtain an HBV DNA viral load. If criteria for treatment of HBV are met, initiating antiviral therapy for HBV is recommended prior to or at the same time as HCV treatment. If criteria for treatment of chronic HBV infection are not met, monthly HBV DNA viral loads are recommended during treatment for HCV.

4  **More frequent monitoring of ALT is necessary in certain situations: 1) Regimens containing elbasvir/grazoprevir:** An ALT should be drawn at 4 weeks and again at 8 weeks, and as clinically indicated. For 16-week regimens, an ALT should also be drawn at 12 weeks; **2) Patients with compensated cirrhosis** who are treated with paritaprevir/ritonavir/ ombitasvir, with or without dasabuvir, require more frequent monitoring of ALT; **3) Increases in the ALT should prompt more frequent monitoring or early discontinuation.** Asymptomatic ALT increases of less than tenfold should be monitored approximately every 2 weeks. Early discontinuation of HCV treatment is recommended if ALT increases by tenfold—or if less than tenfold , but accompanied by *symptoms* such as weakness, anorexia, nausea, vomiting, or change in stool color, or *signs* including elevations in conjugated bilirubin, alkaline phosphatase, and INR, related to hepatic dysfunction

5  A CTP score is calculated only for cases with known or suspected cirrhosis.

6  For treatment regimens recommended in this document, the routine schedule of HCV RNA testing includes baseline testing, after 4 weeks on treatment, and 12 weeks after completion of therapy. BOP recommends pretreatment testing of HCV RNA if the most recent test was performed more than 1 year ago. If the quantitative HCV viral load is detectable after 4 weeks of treatment, it should be repeated 2 weeks later. An HCV RNA is no longer necessary at the end of treatment unless undetectable levels were not achieved during treatment. If HCV RNA is undetectable12 weeks after treatment, BOP recommends repeat testing 6 to 12 months after completion of treatment.

7  On- and post-treatment monitoring for pregnancy is recommended only for RBV-containing regimens. A pre-treatment pregnancy test is recommended for all regimens.

→ **RIBAVIRIN-CONTAINING REGIMENS:** A pretreatment ECG is recommended for inmates with preexisting coronary heart disease. A CBC should be obtained two and four weeks after starting treatment, every four weeks while on treatment, and more frequently as clinically indicated.

Case 2:20-cv-00596-JRS-MG   Document 1-3   Filed 11/10/20   Page 45 of 111 PageID #: 193

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

## APPENDIX 4. MANAGEMENT OF HEMATOLOGIC CHANGES

**Note:** For patients prescribed a direct-acting antiviral (DAA) for HCV infection (e.g., sofosbuvir or simeprevir), if ribavirin must be discontinued due to hematologic changes, the DAA also may need to be discontinued. Consultation with an experienced clinician is recommended.

### HEMOGLOBIN (Hgb)

| Value | Peginterferon/Ribavirin Adjustment and Supportive Treatment | |
|-------|---|---|
| 10–11 g/dL | ☐ **Peginterferon** → No change.<br><br>☐ **Ribavirin** →<br> ▸ If no or minimal symptoms, then no dose modification.<br> ▸ If symptomatic, decrease ribavirin by 200 mg/day. | **Candidates for Erythropoietin:** Rule out other causes of anemia. If anemia persists at 2 weeks after reducing ribavirin—and there is no hypertension—then consider erythropoietin, especially if the patient demonstrates a virologic response. Erythropoietin should be considered primarily for patients who are cirrhotic, post-transplant, HIV/HCV coinfected, or treated with a DAA. |
| 8.5–10 g/dL | ☐ **Peginterferon** →<br> ▸ **Peginterferon alfa 2a** (Pegasys) → No change.<br> ▸ **Peginterferon alfa 2b** (PEG-Intron) → Reduce 50% (see note below).<br><br>☐ **Ribavirin** → ↓ to 600 mg daily (200 mg AM & 400 mg PM) | |
| <8.5 g/dL | ☐ **Peginterferon** →<br> ▸ **Peginterferon alfa 2a** (Pegasys) → No change.<br> ▸ **Peginterferon alfa 2b** (PEG-Intron) → Discontinue until resolved.<br><br>☐ **Ribavirin** → Discontinue until resolved. | **Dosage:** Epoetin alfa 40,000 units subcutaneously weekly<br>**Goal:** Hemoglobin 12 g/dL<br>**Note:** If hemoglobin is <12 g/dL for more than 4 weeks at the reduced/adjusted dose, then discontinue ribavirin. |

### ABSOLUTE NEUTROPHIL COUNT (ANC)

| Value | Peginterferon/Ribavirin Adjustment and Supportive Treatment | |
|-------|---|---|
| <750 | ☐ **Peginterferon** →<br> ▸ **Peginterferon alfa 2a** (Pegasys) → Reduce dose to 135 microgram/week (75% dose).<br> ▸ **Peginterferon alfa 2b** (PEG-Intron) → Reduce to a 50% dose (see note below)<br><br>☐ **Ribavirin** → No change. | |
| < 500 | ☐ **Peginterferon &** **Ribavirin** → Discontinue both until resolved. | **Granulocyte Colony Stimulating Factor (G-CSF):** If the patient is responding to treatment and neutropenia persists despite reduced peginterferon dose, consider G-CSF (in consultation with an expert) for patients who are cirrhotic, post-transplant, HIV/HCV coinfected, or treated with a DAA.<br>**Dosage:** Filgrastim 300 microgram subcutaneous daily or less frequently.<br>**Goal:** ANC >1500 |

### PLATELETS

| Value | Peginterferon/Ribavirin Adjustment and Supportive Treatment | |
|-------|---|---|
| <50,000 | ☐ **Peginterferon** →<br> ▸ **Peginterferon alfa 2a** (Pegasys) → Reduce dosage to 90 micrograms/week (50% dose) (see note below).<br> ▸ **Peginterferon alfa 2b** (PEG-Intron) → Discontinue until resolved.<br><br>☐ **Ribavirin** → If on PEG-Intron, then discontinue ribavirin. | |
| <30,000 | ☐ **Peginterferon** → Discontinue until resolved.<br><br>☐ **Ribavirin** → Discontinue until resolved. | |

**Note:** While the manufacturer of peginterferon recommends reducing dose to 50%, recent data suggest that lowering the dose to this extent may significantly reduce the likelihood of achieving an SVR. Some experts recommend a 25% dose reduction with close monitoring of hematologic parameters.

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

## APPENDIX 5. RESOURCES—PREVENTION AND TREATMENT OF VIRAL HEPATITIS

### HEALTH CARE PROFESSIONALS

- **American Association for the Study of Liver Diseases and Infectious Disease Society of America Hepatitis C Guidance**
  http://www.hcvguidelines.org

- **Centers for Disease Control and Prevention National Center for Infectious Diseases—Hepatitis Branch**
  http://www.cdc.gov/ncidod/diseases/hepatitis/

- **MELD Score Calculator**
  http://optn.transplant.hrsa.gov/converge/resources/MeldPeldCalculator.asp?index=98

- **National Institutes of Health National Institute of Diabetes and Digestive and Kidney Diseases**
  http://www.niddk.nih.gov

- **National Clinicians' Post-Exposure Prophylaxis PEPline: (888) 448-4911**
  http://www.nccc.ucsf.edu/

- **U.S. Department of Veterans Affairs National Hepatitis C Program**
  http://www.hepatitis.va.gov/

### PATIENT EDUCATION

- **American Liver Foundation (ALF)**
  http://www.liverfoundation.org

- **Centers for Disease Control and Prevention (CDC)**
  http://www.cdc.gov/idu/hepatitis/index.htm

- **Hepatitis Foundation International (HFI)**
  http://www.hepfi.org

- **The National Digestive Diseases Information Clearinghouse (NDDIC)**
  http://www.digestive.niddk.nih.gov/ddiseases/pubs/hepc_ez/index.htm

- **U.S. Department of Veterans Affairs National Hepatitis C Program—For Veterans and the Public**
  http://www.hepatitis.va.gov/patient/index.asp

Federal Bureau of Prisons
Clinical Guidance

Evaluation and Management of Chronic HCV Infection
January 2018

## APPENDIX 6. HEPATITIS C TREATMENT ALGORITHM/NONFORMULARY REQUEST WORKSHEET

The BOP *Hepatitis C Treatment Algorithm/Nonformulary Request Worksheet* is available on the next page.

January 2018          Hepatitis C Treatment Algorithm/Nonformulary Request Worksheet
**U.S. DEPARTMENT OF JUSTICE    FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Inmate Name: | Projected Release Date: |
| Register Number: | Weight (lb.):          (within 90 days of request) |
| CTP score (if cirrhotic): | HCV Genotype:   1a   1b   2   3   4   5   6 |

APRI score:        APRI date:
APRI = ((AST/ULN AST)/ Plt) x 100

Liver Biopsy Result / Date:

(amount of fibrosis): ☐ Not Performed ☐ None

☐ Portal ☐ Periportal ☐ Bridging ☐ Cirrhosis

Note: For regimens with elbasvir/grazoprevir in the treatment of HCV genotype 1a, an HCV NSSA virologic resistence test is required.

**Prior Antiviral Treatment for HCV:** ☐ No ☐ Yes    If yes, answer the following:

Drug Names and Dosages:

Start Date:          Stop Date:          Reason stopped:

Prior Treatment Response ☐ SVR ☐ Relapser ☐ Partial Responder ☐ Null Responder

**Requested Treatment Regimen: (check all that apply)**

☐ Daclatasvir        ☐ Sofosbuvir        ☐ Simeprevir        ☐ Ledipasvir/sofosbuvir (Harvoni®)

☐ Paritapravir/ritonavir/ombitasvir/dasabuvir (Viekira XR™)

☐ Paritaprevir/ritonavir/ombitasvir (Technivie®)

☐ Elbasvir/grazoprevir (Zepatier®)        ☐ Glecaprevir/pibrentasvir (Mavyret™)

☐ Sofosbuvir/velpatasvir (Epclusa®)        ☐ Sofosbuvir/velpatasvir/voxilaprevir (Vosevi®)

☐ Ribavirin        ☐ Other_____

**Medical Clearance:**

☐ Sentenced inmate with sufficient time remaining on sentence to complete a course of treatment prior to halfway house (RRC), home confinement, or GCT/Full Term release.

☐ No sanctions for drug or alcohol/intoxicant possession/use, or tattooing within previous 1 year.

☐ No documented non-adherence to prior therapy, failure to complete pretreatment evaluation process, or unwillingness to commit or consent to HCV treatment.

☐ No contraindications or drug interactions with requested treatment regimen

☐ No uncontrolled or unstable medical or mental health conditions.

☐ No current pregnancy

**Health Services Staff Name / Signature / Date / Institution**



**Required Documentation – include copies of the following with this request:**

☐ CBC, serum creatinine and eGFR, liver panel, INR (dated within 90 days of request)

☐ HCV RNA viral load (reported as IU/ml) and genotype (dated within 90 days of request)

☐ HIV Ab - if positive, include CD4 and HIV viral load (dated within 90 days of request) and current antiretroviral medication regimen

☐ Hepatitis B serology (sAb, sAg, and cAb)- if sAg reactive, include eAg, eAb, and HBV DNA viral load

☐ Liver biopsy report (if performed, but not required unless clinically indicated)

☐ If cirrhosis or APRI $\geq$ 2 (defined by pathology or clinical findings), include abdominal US or CT

☐ Pregnancy test if woman with child-bearing potential (dated within 90 days of request)

**PROCEDURE FOR SUBMITTING HCV TREATMENT REQUEST**
- Generate a BEMR non-formulary request (NFR) for Hepatitis C Treatment Algorithm.
- Include all information and attach all required documentation from above.
- May scan and attach Hepatitis C Treatment Algorithm Nonformulary Request Worksheet to NFR.

# Attachment B

# Medical Records, Grievances, and Responses Relating to Kenneth Barrett's Hepatitis C

Attachment 1

FCC Terre Haute

546

Administrative Remedy – Informal Resolution

| | |
|---|---|
| Inmate Name: Kenneth Barrett | Register #: 04342-063 |
| Unit: | Date Submitted: 9-14-18 |

Section 1: NOTICE TO INMATE - Be advised, normally prior to filing a Request for Administrative Remedy, BP-229 (13), you must attempt to informally resolve your complaint through your Correctional Counselor.

Section 1a: Briefly state your specific single complaint: The deliberate Indifference being shown to the Issue of my Hepititis C. Once here I was told I had Hepitites C. And blood draws were done every 6 months, to monitor my viral load and liver function (ALT and AST) I was told that once my viral load reached 10 million, that that was considered liver failure (See Attachment) on back of this page.

Section 1b: Briefly state the resolution you request: Treatment before I die from liver failure or liver cancer

Inmate Signature: Kenneth Barrett

Counselor Printed Name/Signature: S.H.

Section 2: Department Assigned:

| Date Assigned: 9-17-18 | | Date Due: 9-24-18 | |
|---|---|---|---|
| ☐ Food Service | ☐ Unit Mgmt | ☐ Unicor | ☐ Education |
| ☐ Psychology | ☒ Medical | ☐ Chaplain | ☐ Recreation |
| ☐ Trust Fund | ☐ Custody | ☐ Facilities | ☐ Safety |
| ☐ ISM/Mailroom | ☐ Admin. | ☐ SIS | |

Answer ↓

Section 3: Department Head Response:

Issue Resolved Comments: We treat patients w/ the most acute needs first & continue to treat all other patients as time & resources allow. Please

Issue Unresolved Comments: discuss this with the physician at your next

Unable to Address Issue Comments: chronic care appt.

| Inmate Signature if Resolved: | | Date: |
|---|---|---|
| Staff Signature: | | Date: |

Section 4: Tracking

| | BP-8 issued to inmate | BP-8 returned to Counselor | BP-9 issued to inmate | BP-9 returned to Unit Team | To Admin Remedy Clerk | Returned as Rejected |
|---|---|---|---|---|---|---|
| Date | 9-14-18 | 9-18-18 | 9-18-18 | 9-19-18 | | |
| Time | 1200 | 1200 | 1205 | 8:47 | | |
| Staff | AS | AS | AS | AS | | |

RECEIVED

USP Terre Haute

SEP 24 2018

Administrative Remedy Clerk

THX-1330.18C

BP-8 attachment page (liver)

Once it went over 10 million, I was told that they would only do a liver function test every year and that the ALT and AST was the monitor for liver function and treatment. Thats true. But, once my ALT jumped 6 points while allready being in the high range. I was then told that it was my AST that was used to determin function and treatment. This is not true. The BOPs own Clinical Guidelines issued 2017 that the ALT is the determine reading as to monitoring, treatment and a monitor of while on treatment. Treatment I am denied of while my levels increase showing that the virus is active. While this is going on I risk the possibility of liver failure, liver cancer because of the denial of treatment. Also when treatment is done early it increases the odds of succesful treatment and even less treatment and cost. I worry every day of developing liver cancer or my liver just stop operating proper.

Conclution
Recieve treatment before my liver fails or I develop liver cancer. Early treatment before failure could even cost less.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: Barrett Kenneth E    04342-063    S.C.U    U.S.P. Terre Haute IN
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST  As to the Medical Depts, Answer to my BP-8, What could by more Acute or need treated, Then A person who's Hepititis C virus is Active and no doubt causing damage to his liver. which is risking the chance or even increasing the chances of liverfailure and developing liver cancer. I have pains in my liver area, I have bouts of sweating, shaking, loss of sleep, fatigue, weakness and several times have blacked out and fell, I have throat pains were I have to get up in the middle of the night head aches and pain in my bones. Not to mention the constant fear of liver cancer and death. Conclution - To quit letting the virus continue to damage my liver and do so by starting treatment.

9-19-18
DATE

Kenneth Barrett
SIGNATURE OF REQUESTER

Part B- RESPONSE

RECEIVED
USP Terre Haute

SEP 24 2018

Administrative
Remedy Clerk

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 948B-F1

CASE NUMBER: _____

Part C- RECEIPT

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____    BP-229(13)
DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)    APRIL 1982

USP LVN    PRINTED ON RECYCLED PAPER

Remedy No.: 954875-F1                                    FCC Terre Haute, IN

## PART B - RESPONSE

This is in response to your Administrative Remedy receipted September 24, 2018, in which you allege you need treatment for Hepatitis C right away. For relief, you request to start treatment.

A review of your request reveals you do not currently meet the treatment criteria for Hepatitis C treatment as determined by the Infectious Disease Team at FCC Terre Haute. Your condition will continue to be evaluated and monitored during your Chronic Care Clinic, and adjustments will be made to your treatment plan as medically necessary on an individualized basis.

Your most recent lab results have been reviewed by your provider. You had a follow up liver ultrasound on September 26, 2018. Once the report is received, it will be reviewed by your provider.

Therefore, this response to your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, North Central Regional Office, Federal Bureau of Prisons, 400 State Avenue, Suite 800, Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of the date of this response.

10-5-18
_____
Date

_____
J. E. Krueger, Complex Warden

P.4 co-7

U.S. Department of Justice

Regional Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From. BARRETT Kenneth E    04342-063    S.C.U    U.S.P Terre Haute IN
         LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.        UNIT        INSTITUTION

Part A - REASON FOR APPEAL The BOPs own answer shows that the criteria for HepC treatment shows deliberate iddifference to my need for treatment. Basicaly they are addmitting that they will let the disease continue to destroy my liver and not treat me till Im in a state of dire need of treatment. And will continue to let the disease destroy my liver knowing that once Im in the High Critical range that treatment may not be succesful at that stage of progression. Meaning by then it could be to late. All doctors say that its best to treat early, which increases the chance of succsess and lessens the cost of treatment. The BOPs own criteria is in conflict with all medical institions recomendations as to when to treat. You can not take chances when it cares to the liver. treatment and cure is a matter of life and death. Conclution- Get treatment started before its to late.

10-11-18
         DATE

Kenneth Barrett
         SIGNATURE OF REQUESTER

Part B - RESPONSE

_____        _____
     DATE                    REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

Part C - RECEIPT
                                              CASE NUMBER: _____

Return to: _____   _____   _____   _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT       INSTITUTION
SUBJECT:_____

_____                    _____
     DATE                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL
                                                                      BP-230(13)
USP LVN                                                               JUNE 2002

U.S. Department of Justice
Federal Bureau of Prisons
North Central Regional Office

Regional Administrative Remedy Appeal
Part B - Response

Administrative Remedy Number:    954875-R1

This is in response to your Regional Administrative Remedy Appeal received on October 22, 2018. You allege you have been denied treatment for your diagnosis of Hepatitis C.   For relief, you request treatment.

We have reviewed the documentation related to your appeal.   Based on this review, we concur with the manner in which the Warden addressed your concerns.   You have consistently been provided timely and appropriate medical care in accordance with Program Statement 6031.04, Patient Care, the National Drug Formulary, and the Clinical Practice Guidelines (CPG) for the management of Chronic Hepatitis C.   A review of your electronic medical record indicates you currently have an AST-Platelet Ratio Index (APRI) of 0.43, which places you at a Priority Level 3 for Hepatitis C treatment consideration.   Determining whether Bureau of Prisons (BOP) priority criteria for treatment are met is an important part of the initial evaluation and ongoing management of inmates with chronic HCV infection.   Although all patients with chronic HCV infection may benefit from treatment, certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment.   The BOP has established priority criteria to ensure that those with the greatest need are identified and treated first.   You have been counseled by the Clinical Director and Health Services Administrator regarding your current Priority Level classification, which does not fall into the "High Priority for Treatment" category.   However, you will continue to be monitored and evaluated for treatment.   Based on this review, our intervention is not warranted at this current time.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

10/31/18
Date

Amber L. Nelson, Acting Regional Director

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Barrett Kenneth E          04342-063    S.C.U.    U.S.P Terre Haute IN
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL The institions own criteria shows deliberate iddifferance to my needs. Being that my levels continue to rise. But I am refused treatment untill I'm in dire need. All while the virus continues to destroy my liver, making my chances to develope liver cancer or have liver failure be increased. At which time treatment might not be succsessful and I die. Early treatment cost less and is more likely to be succsessful. At one time the instition ok'd interferon treatment but the Regional denied it stating that less evassive drug would soon be used. Now that they are, Im being denied treatment.    Conclution - Get treatment started now while it has a better chance of succsessful cure and cost less.

11-15-18
DATE

Kenneth Barrett
SIGNATURE OF REQUESTER

Part B - RESPONSE

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

Part C - RECEIPT

CASE NUMBER: _____

Return to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT        INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN

BP-231(13)
JUNE 2002

Administrative Remedy No. 954875-A1
Part B - Response

This is in response to your Central Office Remedy Appeal wherein you contend you have been denied proper treatment for Hepatitis C (HCV). For relief, you request immediate HCV treatment.

A review of your electronic medical record confirmed your diagnosis of Hepatitis C. Health Services Staff have monitored your condition through scheduled chronic care evaluations. Based on review of your medical record, you are currently priority level 2 for Hepatitis C treatment according to current Bureau of Prisons (BOP) Clinical Guidance on the Evaluation and Management of Chronic Hepatitis C Virus Infection.

Highest priority for treatment is based on evidence of advanced liver fibrosis, extrahepatic manifestations, transplant candidate or recipient status (if applicable), certain immunosuppressant medications, and continuity of care. Intermediate priority for treatment is based on evidence for progressive fibrosis, and certain comorbid medical conditions. You have confirmed chronic HCV. A liver ultrasound completed on September 26, 2018, was normal except for a possible hemangioma with a recommendation for a follow-up. A liver ultrasound conducted on August 29, 2017, showed stable appearance of the liver with diffuse increased echogenicity. A liver biopsy on December 28, 2011, showed stage 2 fibrosis, which meets priority level 2 criteria. Your non-formulary request for Hepatitis C treatment was disapproved on July 20, 2012, due to you having a relatively mild stage of fibrosis per the BOP Clinical Guidelines at the time.

The Health Services Department at your institution will be notified of your priority level. The BOP expanded access to hepatitis C treatment to all sentenced inmates in August 2018; however, institutions may continue to use the priority level system to prioritize their patients. Staff will continue to monitor your case in chronic care clinic according to the Hepatitis C Clinical Practice Guidelines, with adjustments to your treatment plan as clinically indicated.

Based on this information, there is no evidence to substantiate your claim of being denied appropriate medical care. Should you experience further symptoms or should your condition worsen, you are encouraged to seek care through sick call.

Administrative Remedy No. 954875-A1
Part B - Response
Page 2

The record reflects you received medical care and treatment in
accordance with evidence based standard of care and within the
scope of services of the Federal Bureau of Prisons.

Considering the foregoing, this response is provided for
informational purposes only.


11/29/19
Date

Ian Connors, Administrator
National Inmate Appeals

medical                    3-6-13      ①
                           Request

Cop-Out

On 2-4-13 And then on 2-18-13 I
submitted Cop-Outs requesting a copy of
the Reginal Offices response deffering
my Hep C treatment. Then on 3-6-13
I recieve 9 pages of releases and test
results. None being what I Asked for.

I want a copy of the Regnals defferal
answer denying me Hep C treatment
It starts out by saying that
The Inmate is under a sentence of Death.

I was showed this document on the computor
by P.A Justilino.
what you gave me is test results from the
labs and the documents I sighned here
saying I would accept treatment  I

②

need the Reginals defferel Notice. SAyin why I WAS being deffered treatment. P.A. Justilino told me the date on the Notice WAS 7-13-12

The Reginals Answer deffering Treatment is what I WANT.

Try Again. It's only 1 pAge.

You sent Approval forms not the defferal or notice deffering treatment.

Thankyou
Kenneth Barrett
#04342-063
S.C.U-404-C

3-12-13
ie. NON FormulAry Drug AuthoRization Enclosed- W. Kutch LHF1
PiANNA Kutch

<u>Liver Issue</u>

Filed this over the delay in setting a blood draw done. Because I was told I needed to start interferon treatment but couldn't till one more viral load test was done.

I went for a blood draw on the annuall blood draw test. And told the nurse how I was told that I need to start Interferon treatments for my Hep-C but never had takin a blood draw to check my viral locd. The nurse said that she had been checkin and I was not on the list. And it was cuz a doctor had not sighned off on it yet. But she drew a extra vile of blood and would try and turn it in. But said they might refuse it <u>See medical Notes.</u>    <u>No word yet!</u>

medical refused to answer the BP-8 and I was given the BP-9. And filed it.

In January of 2015 <u>Medical</u> was viral load count
was 7,590,000.

My ALT was 49H Range is 10-37
My AST was 41H Range is 8-40

In May 2015 my viral load was 7,685,695
<u>My ALT was 68-H</u>  range 10-37
My AST was 42-H  range 8-40

My viral load jumped  95,695
<u>My ALT jumped</u>  19 pt.
My AST jumped  1 pt.

Took 10 months
to get my viral
load tested
and now it
has a big jump

①

June 2013 - Viral load was 4,050,000
RNA - 6.61 H
In Oct of 2013 they check my AST and ALT

(AST was 42 H) (ALT 63 which is High.)
(Normal range 10-37) (Normal range 8-40

My viral load was up to 7,523,656
up from last time.
RNA - 6.88 H

---

Then in Jan 2014 ~~~~~~ (AST was 38 H
ALT was 54 H range 8-40 (Range 10-37
I wasn't feeling good I can tell when my liver is bad. Actin

---

- Jan 2015 my viral load was 7,590,000 - up from last time
RNA was 6.88 H
AST - 41 H range 10-37
ALT - 49 H range 8-40

②

Then in May 2015 my viral load is 7,685,695
RNA-is 6.89 H                                  up more.

AST H at 42 Range 10-37
ALT H at 68 Range 8-40 Big jump
                                    ALT is the
                                    important one.

All this shows the virus is Active
And harming my liver. While I wait
for treatment.

Level 1.5   Not even considered till 2.0

after review of your dermatology consultation, they recommend clindamycin cream as needed with ∅ further follow-up.

you have been submitted for an allergy consultation.

KIMBERLY KLINK
CDR, FNP-BC
AHSA
FCC TERRE HAUTE

1/30/15

Pecieud on 2-3-16 (little short woman) Showed every nurse she said I'm not gettin the cream that they put me in for Allergy consedation

Remedy No.: 689709-F1                                              FCC Terre Haute, IN

**Remanded**
**PART B - RESPONSE**

This is in response to your Administrative Remedy receipted on May 23, 2012, in which you allege medical deliberate indifference for failing to provide treatment for your liver disease.  You allege you have not yet received the blood draw required to receive interferon treatment.  As relief, you request your viral load to be drawn and interferon treatment to be initiated.

A review of your request reveals a Hepatitis C viral load was drawn on June 20, 2012. The result of that lab was 8,148,789.  The liver biopsy was done on December 29, 2011. The pathology report determined inflammation at grade 1-2, and fibrosis at stage 2.  A non-formulary request for Hepatitis C treatment was submitted on July 13, 2012.  The treatment was deferred at the Central Office level. Per medical documentation, "Due to relatively early fibrosis (stage 2) it would be prudent to consider deferring treatment until less toxic and more effective oral regimens become available."  It was recommended that another non-formulary request for one of the HCV protease inhibitors (triple therapy) be submitted and approved prior to initiation of therapy.  If you would like to be considered for this treatment you will need to discuss this with your clinical provider at your next chronic care visit.  You may sign up for sick call if you have any further problems which need to be addressed prior to your next chronic care visit.

Therefore, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Gateway Complex, Tower II, 8th Floor, 4th & State Ave., Kansas City, Kansas 66101.  Your appeal must be received within 20 calendar days of the date of this response.

6/22/12
_____
Date

_____
J. F. Caraway
Complex Warden

BP-A0803    Algorithm for Treatment of Hepatitis C/Approval Form CDFRM
MARCH 12
U.S. DEPARTMENT OF JUSTICE                                      FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| Inmate Name: BARROTT KENNGTH | Register Number: 04342-063 |
| Institution: FCC -THP | Projected Release Date: UNKNOWN |
| Date of Birth: 6-29-61 | Weight (lb.): 186    (Within 90 days of request) |
| HCV Genotype: ①,2,3,4,5,6, untypeable | Liver Biopsy Result (Degree of fibrosis): □None/ □Portal/ ☑Periportal / □Bridging/ □Cirrhosis |

Prior Antiviral Treatment for HCV: ☑No / □Yes    If Yes, answer the following:
Drug Names and Dosages:
Start Date:        Stop Date:        Reason Stopped:
HCV RNA result after prior treatment:        Date of HCV RNA result:
Prior Treatment Response:  □SVR or □Relapser or □Partial Responder or □Null Responder

Treatment Requested:
☑Triple Therapy (genotype 1 only)- peginterferon + ribavirin + HCV protease inhibitor
□ Dual Therapy - peginterferon + ribavirin

Medical Clearance:
☑Sentenced inmate with sufficient time remaining on sentence (excluding halfway house time) to complete course of treatment.
☑No sanctions for drug or alcohol/intoxicant possession / use, or tattooing within previous 1 year.
☐No uncontrolled or unstable medical or mental health conditions.
☑No documented non-adherence to prior therapy, failure to complete pretreatment evaluation process, or unwillingness to commit or consent to HCV treatment.
☐No Contraindications to peginterferon and ribavirin:
   □No autoimmune hepatitis
   □No decompensated cirrhosis (ascites, encephalopathy, esophageal varices)
   □No current pregnancy
   □No known hypersensitivity to peginterferon or ribavirin.
   □No anemia (hgb < 12-13 g/dl men or < 11-12 g/dl women), neutropenia (ANC < 1,500), or thrombocytopenia (Plt count < 75,000).
   □No history of solid organ transplant (unless recommended by transplant specialist)
☑No contraindications to HCV protease inhibitor (triple therapy):
   □No contraindications to pegylated interferon and ribavirin.
   □No HCV genotype 2, 3, 4, 5, 6 or untypeable.
   □No HBV or HIV co-infection.
   □No prior treatment failure with HCV protease inhibitors.
   □No concurrent treatment with medications that are either contraindicated or not recommended.
   □No known hypersensitivity to boceprevir or telaprevir.

Name / Signature / Date of Requesting Clinician / Clinical Director:
   MD  6-28-12

Required Documentation - include copies of the following with this request:
☑CBC with differential, chem panel, liver panel, & INR (dated within 90 days of request)
☑TSH and Free T₄
□HbA1C (diabetics only; dated within 6 months of request)
☑HCV RNA Viral Load (reported as IU/ml) and Genotype
☑Liver Biopsy Report (if indicated)
   -If cirrhosis, include serum AFP and/or abdominal US or CT.
☑Hepatitis B serology (HBsAb and HBsAg)
   -If HBsAg reactive, include HBeAg, HBeAb, and HBV DNA viral load
☑HIV Ab - If HIV Antibody positive, include CD₄ and HIV viral load (dated within 90 days of request), and current antiretroviral medication regimen.
☑Mental health assessment (dated within 6 months of request).
☑ Signed Consent to Hepatitis C Treatment form BP-A0806.

PROCEDURE FOR SUBMITTING HCV TREATMENT REQUEST
- Scan BP-A0803 and required documentation (see above) into BEMR Document Manager as .pdf file.
- Attach to BEMR non-formulary request for Hepatitis C Treatment Algorithm.

PDF                          Prescribed by P6360              Replaces BP-A0803 (Jun 10)

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Barrett   Kenneth   E          04342-063        S.C.U.        U.S.P. Terre Haute, IN
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　　REG. NO.　　　　UNIT　　　　INSTITUTION

Part A - REASON FOR APPEAL This is to continue the grevence process on the issue of the delibate medical Indifference being showed to my liver problems. The BP-8,9 and 10 clearly lay out the issue. And the problems with the responses and the keeping of my medical records. Now instead of a answer to the BP-10, Regional sends it back to me and the institution with the choice of waiting for a Answer from them or continuing on. I have proved that the Warden and medical are not paying attention to grevences or my records. After filing a BP-10 on 6-18-12 and then submitting a cop-out to medical on 6-20-12 (see Ex 2) I was then informed that I would recieve a liver biobsy. Which once again shows the failure of staff to read the grevences and keep medical records - right.

7-18-12
DATE
　　　　　　　　—See Attachment—

Kenneth Barrett
SIGNATURE OF REQUESTER

Part B - RESPONSE

RECEIVED

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: 689709-A1

Part C - RECEIPT

CASE NUMBER: _____

Return to: _____        _____   _____   _____
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　　REG. NO.　　　　UNIT　　　　INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN

BP-231(13)
JUNE 2002

— BP-11 Attachment page. —

Because on 12-28-11 I had allready recieved a liver biobsy. After all the mix-up I submitted a cop-out to a Mr Rubska of Medical on 6-24-12. I layed out all the problems with grevence answers and my medical coards On 6-25-12 Mr Rubska informed me that he talk to the doctors and everything was straitined out. That evening of 6-25-12 I then sighed a form that was to be submitted to Regional for the approval of treatment. Then on 7-17-12 I recieve a Answer to my BP-10 from Regional (see Ex 3) Which is just another delay. Not only in treatment but in my grevence process as well. Exspecilly when the BP-10 answer says I can wait on a answer from the insitition the file the BP-10 again or move foreword. With only 30 days to appeal. And the BP-10 Answer being made on 7-5-12 and not recieved till 7-17-12 (see Ex 4) And no mention of how long I have to wait on the new institional answer. Which waiting might make my tire to refile the BP-10 elapes. This continues to be a runaround and a delay in treatment. Clearly the system is not working.

Conclution

Get the needed medical treatment that is known to be needed. And for the delays and delibarate medical Indifference to stop. Exspecilly with liver problems being a life and death issue.

**U.S. Department of Justice**

**Federal Bureau of Prisons**

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Barrett   Kenneth   E          04342-063      S.C.U        USP-Terre Haute, IN
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT         INSTITUTION

**Part A - REASON FOR APPEAL** This is to continue the grevence process on the issue of the delibalete medicel indefference being showed to my liver problems. These differences can be seen thr out the previously filed BP-8 and BP-9. Which clearly must not have been reviewed. In the Wardens answer he states that I am on the list for a blooddraw to check my Hep C viral load. And that a request has been placed by the URC for a liver biobsy. If the BP-8 and 9 had been read and my medical file reviewed. Then the Warden would have known that 4 days after the BP-9 was filed that a blood draw was done. And that a liver biobsy was done back on 12-28-11. So the Wardens Answer is wrong in many ways. Also the blood draw that

6-18-12   - see Attachment page-    Kenneth E. Barrett
DATE                                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____    _____
DATE                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C - RECEIPT**                                              CASE NUMBER: _____

Return to: _____    _____    _____    _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                                                          BP-230(13)
                                                                 JUNE 2002

BP-10 Attachment page.

was done on 5-18-12 that was suppost to check my viral load didn't check the load count. Just like a previous draw didn't. As for the liver biobsy that had allready been done on 12-28-11. A review of the results showed that interferon treatment was needed. Which I was told the treatment could not start till a viral load count was done. Now after waiting months and months a blood draw was finally done but the viral load was not checked. Even tho the load count was not checked on 5-23-12 I was notified that my record was reviewed by the U.R.C. and was sent to the Central Office for them to review and decied treatment. The deliberate medical indiffrence continues to be shown. We know what is needed. But instead continue to delay and wait while my liver worsins. Clearly there is also a problem with the review of my grevances and my medical file also.

Conclution

To get the treatment that is known to be needed. Instead of stalling by way of waiting for my liver to fail and I die. due to the deliberate medical Indifference that is being shown to my need for treatment.

Remedy No.: 689709-F1                                    FCC Terre Haute, IN

## PART B - RESPONSE

This is in response to your Administrative Remedy receipted on May 23, 2012, in which you allege deliberate medical indifference regarding your liver problems. You allege that you have not had your blood drawn to determine your Hepatitis C viral load. As relief, you request to have your blood drawn to determine your Hepatitis C viral load.

A review of your request reveals that you have been placed on the scheduler to have your blood drawn. A request has also been placed for a liver biopsy through URC.

Therefore, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Gateway Complex, Tower II, 8th Floor, 4th & State Ave., Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of the date of this response.


6-11-12
Date

Charles L. Lockett
Complex Warden

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Barrett Kenneth E    04342-063    S.C.U    U.SP Tetrallade
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST This is to continue the Grevence Process on the issue of the deliberate medical Indifferance being shown to my liver problems. On 3-28-12 I filed a BP-8 which Counseler Edwards Sighed on 4-3-12. Only the Unit maneger never sighed it. The recieve and return portion was not filed out and it was not given back to me till 4-26-12, Nor did the medical dept. Answer it. It was simply given back to me with a BP-9. With a response by Mr Edwards sayin, "No response by medical. See Ex 1 and 1A attached. Not only is my grevence process being hampered but I still have not had the needed blood draw to check my HepC virol lood count. Which is needed before starting the

5-14-12    see Attachment Page!    Kenneth Barrett
  DATE                                        SIGNATURE OF REQUESTER

Part B- RESPONSE

_____    _____
      DATE              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 689709-F1

CASE NUMBER: _____

Part C- RECEIPT

Return to: _____    _____    _____    _____
              LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
      DATE              RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN    PRINTED ON RECYCLED PAPER    BP-229(13)
                                          APRIL 1982

<u>BP-9 Attachment page.</u>    (5-14-12)

Interferon treatment which the P.A said I needed. See the BP-8 and attachment page for the progress of the issue. Also on 4-9-12 at a regular annual blood draw I talk to the nurse's about how I had not yet had the blood draws needed to check my viral load count. The nurse said she had not seen my name. And that if a P.A ordered it that a doctor needed to sigh off on it, And one hadn't or she would have seen my name. She said she would draw a extra vile of blood and try and turn it in for a viral load count test. But that it will probably be rejected. To date I have not heard anything. I had a biobsy on 12-28-11 The P.A ordered a viral load count blood draw on 2-14-12. Liver failure is a life and death issue. On 2-14-12 the P.A and me went over my biobsy results. He said it showed my liver was worsing and I needed to start inteferon treatments. And would after the viral load count test results. Clearly the delay in treatment can only be seen as deliberate medical ind. fference.

<u>Conclution</u>.

Get the needed blood draws done to check my viral load and then start inteferon treatments. Especially since my first test showed a load count of 5,800,000 and the second was 8,100,000 And that was months and months ago.

EX1  *315*

Attachment f
THX-1330.13J

## FEDERAL CORRECTIONAL COMPLEX
## TERRE HAUTE, INDIANA
## INFORMAL RESOLUTION FORM

Inmate Name: Kenneth Barrett    Reg. No. 04342-063
Unit: S.C.U.

**NOTICE TO INMATE:** You are advised normally prior to filing a Request for Administrative Remedy, BP-2999(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below:

1.   State your complaint: This grevence is bein filed over the delibarete medicel ndiffernce bein showed to my liver problems. Back in Dec 2011 a blood draw was ordered to check my Hepc viral load. Because it continues to jump. Only the viral load wasn't checked at the last blood draw as the P.A. ordered

(If more space is needed, you may use up to one letter size (8 ½ x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to the BP-229(13) responses.))    See Attachment page.

2.   State what actions you have made to informally resolve your complaint: Talk to medical, nurse and P.A

3.   State what resolution you expect Get the needed blood-draw done so I can start treatment.

Inmate's Signature: Kennth Bartt    Date: 3-28-12

Correctional Counselor's Comments (Steps to Resolve): was reg̱ved by medicel please se attached BP-9.

Counselor' Signature: _____    Date: 4/3/17
Unit Manager's Review: _____    Date: 5/.4/2012
Informally Resolved: _____    Date:

|  | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED |
|---|---|---|---|---|
| DATE |  |  |  |  |
| TIME |  |  |  |  |
| COUNSELOR |  |  |  |  |

EX. 1A

Attachment page BP-8 "Liver Issue"

On 12-28-11 I had a liver biobsy. It took several weeks and several cop-outs to get the results. Even tho after being at the hospital in another issue they said they had allready sent the results to the insitition. Once I recieved the reports It took several more weeks to see the P.A to discuss the results. After discussing the results it showed my liver was worsining. And the Hep C virus was speading. And that I needed to start Interferon treatment. But another blood draw needed to be done first Which was ordered on 2-14-12. Then after seeing the P.A on another issue I told him I had not had the blood draw yet. He said they only check Hep C viral loads every 6 months. Being liver failure is a life and death issue, exspeacilly when it's attacking my liver because of the Hep C. And can be seen in my weight loss, fatigue and illness feeling. I fine it hard to belive that since treatment can't start till after the blood draw is done. And liver failure is life or death issue. That waiting 6 months is only letting my liver get worse while the virus continues to attack it. This wait can only be seen a deliborate medical indiffenence. And that a simple blood draw would hold up treatment clearly shows that. While my liver worsens as we wait, for something so simple.

<u>Conclution.</u>

Get the test done of my viral load. Get started on the treatment. And to quit showing deliberate medical indifference to a life and death issue.

BP-A0806
MARCH 12

### CONSENT TO HEPATITIS C TREATMENT

**U.S. DEPARTMENT OF JUSTICE**         **Federal Bureau Of Prisons**

*After discussing each item with the inmate, the health care provider should initial numbers 1 through 13 for all patients being considered for hepatitis C treatment, and numbers 14 through 27 if treatment includes telaprevir or boceprevir.*

I, KENNETH BARRETT _____, Reg. No. ___04342-063___, hereby authorize Dr.___Wilson, William E. MD/CD___ or his/her relief (designee), to prescribe pegylated Interferon (PEG-Intron®, Pegasys®) and ribavirin (Rebetol®, Copegus®), and telaprevir (Incivek®) or boceprevir (Victrelis®) if indicated, to me and to continue said medication as is recommended by BOP Clinical Practice Guidelines. I understand my medical condition and why this combination of medications is being recommended to treat my disease.

1. _KS_ The treatment of hepatitis C virus infection (HCV) with medication, is indicated for certain patients. Your health care provider will prescribe the regimen that is most appropriate for your condition. In some cases, dual therapy with pegylated Interferon injections plus oral ribavirin is the most appropriate regimen. In other cases, triple therapy with pegylated Interferon injections plus oral ribavirin in combination with an oral HCV protease inhibitor, e.g. boceprevir or telaprevir, will be recommended.

2. _KS_ This treatment requires frequent visits to the Health Services Unit for outpatient visits, blood tests, medication injections and pill line administration of some medications. Attending these appointments and adhering to the treatment regimens are essential to achieve a safe and successful treatment result and to reduce the likelihood of the virus becoming resistant to treatment. Prior to starting treatment, each patient must assess their ability and willingness to comply with the treatment regimen described by their health care provider. In some cases, postponing treatment may be acceptable or even preferred.

3. _KS_ This treatment is associated with numerous adverse and potentially serious side effects. Your health care provider, along with pharmacy and laboratory, will carefully monitor you for side effects and your response to this therapy.

4. _KS_ The most common side effects of this treatment are "flu-like" symptoms, such as headache, fatigue, muscle aches, and fever. These symptoms may decrease in severity as treatment continues. Taking acetaminophen (Tylenol®) prior to Interferon administration may help alleviate some of these adverse effects.

5. _KS_ Psychiatric problems, such as insomnia and depression, are frequently associated with this therapy. If you feel you are getting irritable or easily upset, feel hopeless or bad about yourself, or experience any other uncommon psychological problems, you should immediately contact your health care provider. More severe psychiatric problems also may occur, including psychosis, severe depression, suicidal thoughts, or completed suicide.

6. _KS_ Some patients will develop blood problems such as reduced red blood cells (anemia), or reduced white blood cells or platelets. Between 5%-10% of the patients taking ribavirin therapy develop anemia within 1 to 4 weeks of beginning treatment. You will receive a Complete Blood Count on a regular basis to determine if you are developing anemia. Your white blood cells and platelets also will be closely monitored. If these levels drop below acceptable levels you may need to discontinue the medication or more following 10%.

7. _KS_ Your thyroid function will be closely monitored because a small percentage of patients (approximately 4%) will develop thyroid dysfunction that may be irreversible, even if treatment is discontinued.

8. _KS_ Other common side effects include bruising, irritation, or itchiness at the injection site, nasal stuffiness, and reversible thinning of the hair.

9. _KS_ Ribavirin can cause birth defects. Both women and men, particularly those awaiting release, must be counseled to use adequate birth control (2 forms of birth control) during treatment and 6 months after treatment is completed.

10. _KS_ Ribavirin should not be taken if you have severe kidney dysfunction.

11. _KS_ It is important to abstain from illicit drug or alcohol use, or from receiving tattoos which may interfere with medication treatments, worsen liver disease, or increase the risk for reinfection with HCV or other infections.

12. _KS_ You should immediately speak to your doctor if you experience any side effects described above, or you experience trouble breathing, chest pain, severe stomach or lower back pain, bloody diarrhea or bloody bowel movements, high fever, bruising, bleeding, decreased vision, weight loss, rashes, or other symptoms that concern you.

13. _KS_ To improve your comfort and the chances of successfully completing this course of treatment you should get plenty of rest, exercise lightly but regularly, drink plenty of water or clear fluids every day, eat regularly, and take acetaminophen for fevers and "flu-like" symptoms.

If HCV protease inhibitors are not a treatment option for this patient, skip the next section on protease inhibitors and complete the signature blocks at the bottom of page 2.

THP--TERRE HAUTE USP        1

**For patients treated with an HCV protease inhibitor, such as boceprevir or telaprevir, the following applies in addition to interferon and ribavirin:**

14. ____ The HCV protease inhibitors are indicated for the treatment of HCV genotype 1 only and must be taken in combination with pegylated interferon and ribavirin. They should never be taken without these other 2 medications.

15. _KS_ The HCV protease inhibitors, such as boceprevir and telaprevir, must be taken by mouth every 8 hours, +/- 1 hour, with food.

16. _KS_ Boceprevir capsules are 200 mg each. If prescribed boceprevir, you must take 4 boceprevir capsules, a total of 800 mg, for each dose. Telaprevir tablets are 375 mg each. If prescribed telaprevir, you must take 2 telaprevir tablets, a total of 750 mg, for each dose.

17. _KS_ Each dose of boceprevir or telaprevir must be taken with food. For boceprevir, a light snack is sufficient. Telaprevir must be taken with a snack that has at least 20 grams of fat. Examples of snacks that have 20 grams of fat include a bagel with cream cheese, 1/2 cup of nuts or trail mix, 3 tablespoons of peanut butter, 1 cup of regular (not low fat) ice cream, 2 ounces of American or cheddar cheese, or 2 ounces of potato chips. Your health care provider will discuss the types of snacks that will meet your needs.

18. _KS_ It is important to take these medications every 8 hours, +/- one hour, and not to miss any doses. If you forget to take a dose of boceprevir, do not double the next dose. The missed dose may be taken with food if you remember it more than 2 hours before the next dose but should be skipped if there are 2 hours or less before the next dose. If you forget to take a dose of the telaprevir, do not double the next dose. The missed dose may be taken with a 20 gram fat snack if you remember it more than 4 hours before the next dose but should be skipped if there are 4 hours or less before the next dose.

19. _KS_ Boceprevir and telaprevir can be stored at room temperature up to 77°F for up to 3 months.

20. _KS_ The incidence of anemia is higher with HCV protease inhibitors than with interferon and ribavirin alone. Dose adjustment of pegylated interferon and/or ribavirin may be indicated if hemoglobin levels drop significantly. There is no dose adjustment for telaprevir or boceprevir. If these levels drop below acceptable levels, you may need to discontinue all medication for Hepatitis C treatment including telaprevir/boceprevir. Your health care provider will advise you if this is necessary.

21. _KS_ The incidence of rash or adverse skin reactions with or without itching is higher with telaprevir than with pegylated interferon and ribavirin. Antihistamines and low-dose topical coricosteroids may help relieve some of the symptoms.

22. _KS_ Anorectal symptoms, including hemorrhoids, burning, and itching, may occur with the use of telaprevir.

23. _KS_ Uric acid levels may rise with telaprevir. These levels will be closely monitored. Please report any symptoms of gout to your health care provider.

24. _KS_ An alteration in taste can occur with use of telaprevir or boceprevir.

25. _KS_ To ensure continuity of care and provide the best opportunity for a successful outcome, a medical hold status that prevents your transfer to another institution may be placed until the course of therapy is complete.

26. _KS_ HCV protease inhibitors should not be taken or prescribed if you already are taking certain other medications. A comprehensive medication review is essential before initiation of Hepatitis C treatment. Your health care provider will discuss these medications in greater detail. If a new medication is prescribed for you while you are taking an HCV protease inhibitor, you should inform them that you are taking these medications.

27. _KS_ Due to the high potential for development of resistance, if telaprevir or boceprevir is discontinued, it shall not be restarted.

Physician Signature _Klint Stander MD_

Based upon interview, assessment, and medical record review, it is my opinion that this patient understands the proposed treatment, the risks and benefits of the treatment, and is competent to give consent.

Physician Signature_____

Based upon interview, assessment, and medical record review, it is my opinion that this patient understands the proposed treatment, and is not competent to give consent.

Other issues discussed:_____

I certify that I have read the foregoing, or have had it explained to me in a language that I understand and hereby consent to treatment and have no additional questions. I understand that I may stop taking this medication by contacting the physician. However, I understand that discontinuing the medication may result in failure to control progression of liver disease.

Inmate Signature _Russell Bush_   Reg No. ____04342-063____   Date: ____6-25-2012____

Witness Signature_____   Date: ___6-25--12___

Attending Physician:_____ K Stander M.D.

Physician

FCC Terre Haute

THP--TERRE HAUTE USP                                         2

494

Attachment 1
THX-1330.13J

FEDERAL CORRECTIONAL COMPLEX
TERRE HAUTE, INDIANA
INFORMAL RESOLUTION FORM

Inmate Name: Kenneth Barrett    Reg. No. 04342-063
Unit: S.C.U

NOTICE TO INMATE: You are advised normally prior to filing a Request for
Administrative Remedy, BP-2999(13), you must attempt to informally resolve your
complaint through your Correctional Counselor. Please follow the steps listed below:

1.  State your complaint: On 2-1-13 I was shown on the computer
by P.A. Justlin a copy of the Regional dr-ferral
of my Hepitities C treatment. Dated 7-13-12
Since then I have submitted 2 cop-outs to medical
Records in order to get a cop of that report.
But medical Records will not answer my cop-outs.

(If more space is needed, you may use up to one letter size (8 ½ x 11) continuation
page. You must also submit one copy of supporting exhibits. (Exhibits will not be
returned with the response to the BP-229(13) responses.))

2.  State what actions you have made to informally resolve your
complaint: Sent 2 cop-out's to medical Records
1 on 2-4-13 another on 2-18-13

3.  State what resolution you expect To be given a copy of the
record (document) that I was shown by the
P.A. on 2-1-13. The record is dated 7-13-12 by
the Regional Office.

Inmate's Signature: Kenneth Barrett    Date: 2-25-13

Correctional Counselor's Comments (Steps to
Resolve): Please See Attached Response.

Counselor' Signature: _____    Date: 2/28/13
Unit Manager's Review: MGB    Date: 2/28/13
Informally Resolved: _____    Date:

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED |
|---|---|---|---|---|
| DATE | | | | |
| TIME | | | | |
| COUNSELOR | | | | |

 **MEDLAB**

Lab AutoReporting
**FINAL**

1606 N 7th Terre Haute, IN 47804

Patient Name: BARRETT, KENNETH          MRN: M00206877   Location: FEDERAL PENITENTIARY LA
Patient ID: M00455422                   Sex: M          Requested by: WILSON, WILLIAM (ER
DOB: 06/29/1961                         Age: 52         Chart#: 04342063

*04342-063*
*USP*

Order#: B8211548

WILSON, WILLIAM (ERIC)
1513 N. 6 1/2 ST
TERRE HAUTE IN 47807

## REFERENCE LAB CHEMISTRY

| Test Name | Result | Flag | Reference | Units | Site |
|---|---|---|---|---|---|
| **Hepatitis C RNA Qnt** | | | | | |
| Collected 10/21/13 06:00 | | | | | |
| HCV RNA,PCR,QN IU/L | 7523656 | H | <15 | IU/mL | Q |
| HCV RNA,PCR,QN logIU/L | 6.88 | H | <1.18 | log IU/mL | Q |

\*Please note:

The guidelines for the use of the new anti-HCV
therapies (boceprevir and telaprevir) recommend
using a test method that detects plasma viral
nucleic acid levels as low as 10 IU/mL.

This assay has a Limit of Detection of 10-13 IU/mL
for genotype 1 and conforms to the recommendation.
Quantitation of plasma HCV nucleic acid levels below
15 IU/mL (the Lower Limit of Quantitation for this
test) may not be linear, and in this circumstance are
reported as "15 IU/mL HCV RNA Detected".

Please note:
Due to character limitations of some clients' LIS
systems, viral load values greater than 10 million
are reported using scientific exponential notation.
For example a result of 10 Million (10,000,000) is
reported as 10.0E6 IU/mL or copies/mL. If your LIS
continued on next page

Q: Quest_Diagnostics_Nichols_Institute, 14225 Newbrook Drive, Chantilly, VA 20153 (703)802-6900

Flags: H-high  L-low  P-Panic PH-panic high  PL-panic low  \*/A-abnormal  T-toxic N-normal

Patient Name: BARRETT, KENNETH                    MRN: M00206877      Dr.: WILSON, WILLIAM (ER
                                    RL1.rf  954  AUTO

Printed: 10/23/2013 20:21                                                    PAGE: 1 of 2

 **MEDLAB**

Lab AutoReporting
**FINAL**

1606 N 7th Terre Haute, IN 47804

Patient Name: BARRETT, KENNETH          MRN: M00206877    Location: FEDERAL PENITENTIARY LA
Patient ID: M00455422                   Sex: M            Requested by: WILSON, WILLIAM (ER
DOB: 06/29/1961                         Age: 52           Chart#: 04342063

*04342-063
USP*

Order#: B0211548                        WILSON, WILLIAM (ERIC)
                                        1513 N. 6 1/2 ST
                                        TERRE HAUTE IN 47807

continued

## REFERENCE LAB CHEMISTRY

| Test Name | Result | Flag | Reference | Units | Site |
|---|---|---|---|---|---|

will accept the number of characters required for
viral loads greater than 10 million, please contact
your local service representative to have this
reporting convention changed.

The method used in this test is Real-Time PCR
of the 5' UTR of the HCV genome.

This test was performed using the COBAS(R) AmpliPrep/
COBAS(R) TaqMan(R) HCV Test, v2.0.

For more information on this test, go to
http://education.questdiagnostics.com/faq/FAQ22v1

The performance characteristics of this assay have been
determined by Quest Diagnostics Nichols Institute.
Performance characteristics refer to the analytical
performance of the test.

Q: Quest_Diagnostics_Nichols_Institute, 14225 Newbrook Drive, Chantilly, VA 20153 (703)802-6900

Flags: H-high  L-low  P-Panic  PH-panic high  PL-panic low  */A-abnormal  T-toxic  N-normal

Patient Name: BARRETT, KENNETH                    MRN: M00206877          Dr.: WILSON, WILLIAM (ER
                                    RL1.rf  854  AUTO
Printed: 10/23/2013 20:21                                                        PAGE: 2 of 2



**Federal Bureau of Prisons**

## FMC Rochester

2110 East Center Street
ROCHESTER, MN 55904
(507) 287-0874

\*\*\* *Sensitive But Unclassified* \*\*\*

| Name | Reg Number | DOB | Sex | Location | Unit |
|------|-----------|-----|-----|----------|------|
| BARRETT, KENNETH | 04342-063 | 6/29/1961 | M | USP Terre Haute | |

| Provider | Collection Date | | Received Date | | Sample ID |
|----------|-----------------|--|---------------|--|-----------|
| William Wilson MD | 10/21/2013 | 06:00 | 10/22/2013 | 11:30 | 295132162 |

| Test | | Result | Reference Range | Units |
|------|--|--------|-----------------|-------|

### HEPATIC PROFILE

| Test | | Result | Reference Range | Units |
|------|--|--------|-----------------|-------|
| AST | H | 42 | 10-37 | U/L |
| ALT | H | 63 | 8-40 | U/L |
| Alkaline Phosphatase | | 82 | 49-126 | U/L |
| Total Bilirubin | | 0.4 | 0.1-1.1 | mg/dL |
| Direct Bilirubin | | 0.1 | 0.0-0.3 | mg/dL |
| GGT | | 20 | 10-45 | U/L |
| Total Protein | | 7.3 | 6.3-8.3 | g/dL |
| Albumin | | 4.6 | 3.5-5.0 | g/dL |
| PSA | | 0.86 | 0.00-4.40 | ng/mL |

Legend    L=Low    Ll=Low Critical    H=High    Hl=High Critical    A=Abnormal    Al=Abnormal Critical

| Name | Reg Number | Location | Sample ID | Report Date |
|------|-----------|----------|-----------|-------------|
| BARRETT, KENNETH | 04342-063 | USP Terre Haute | 295132162 | 10/22/2013 |

Administrative Remedy No. 689709-A1
Part B - Response

This is in response to your Central Office Administrative Remedy Appeal wherein you allege deliberate medical indifference regarding your hepatitis C (HCV). In addition, you claim staff continue to give you the runaround in relation to your grievances and contend an undue delay in treatment for your condition. For relief, you request HCV treatment.

We have reviewed documentation relevant to your appeal which reveals you do not currently meet criteria for Hepatitis C treatment based on the Federal Bureau of Prisons' Clinical Practice Guidelines for the Evaluation and Treatment of Hepatitis C and Cirrhosis. The non-formulary request for HCV treatment was disapproved due to your relatively mild stage of fibrosis, with treatment being deferred. Also, your liver ultrasound from January 17, 2013, was normal.

In regards to the repeat requests for a liver biopsy, it was determined the December 28, 2011, biopsy was sufficient and did not warrant repeating at this time. Furthermore, viral load labs were ordered by a provider for June 11, 2012; however, the test was cancelled on June 14, 2012, due to insufficient blood to run the test. The viral load was subsequently drawn on October 22, 2012, and again on May 23, 2013. The viral load test does not need to be drawn again unless treatment is being considered, for which you may be reconsidered for re-biopsy within 3 to 5 years of your previous biopsy date.

You have failed to provide evidence to substantiate your contentions of deliberate medical indifference, inadequate attention to your grievances regarding HCV treatment or an unnecessary delay in care.

The record reflects you received medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. You are encouraged to comply with proposed medical treatment so staff can continue to provide essential medical care and to utilize normal sick call procedures should you experience further symptoms or should your condition worsen.

Administrative Remedy No. 689709-A1
Part B - Response
Page 2

Considering the foregoing, this response is provided for informational purposes only.

October 24, 2013

Date

Harrell Watts, Administrator
National Inmate Appeals



**Federal Bureau of Prisons**

**FMC Rochester**
2110 E. Center Street
Rochester, MN 55904
507-287-0674

\*\*\* Sensitive But Unclassified \*\*\*

| | |
|---|---|
| Name BARRETT, KENNETH | Facility USP Terre Haute |
| Reg # 04342-063 | RCH Unit |
| DOB 06/29/1961 | Provider Roger Bailey, MD |
| Sex M | |

Collected 01/02/2014 7:00
Received 01/03/2014 11:56
Reported 01/03/2014 14:02
LIS ID    003141707

## CHEMISTRY

| | | | | |
|---|---|---|---|---|
| Sodium | | 141 | 136-146 | mEq/L |
| Potassium, serum | | 4.2 | 3.6-4.9 | mEq/L |
| Chloride | | 105 | 98-108 | mEq/L |
| CO2 | | 26 | 22-29 | mmol/L |
| BUN | | 18 | 7-24 | mg/dL |
| Creatinine | | 1.2 | 0.6-1.2 | mg/dL |
| GFR IDMS est. | | >60 | | |

GFR units measured as mL/min/1.73m^2.
If African American multiply by 1.210.
A calculated GFR <60 suggests chronic kidney disease if present over a 3 month period.

| | | | | |
|---|---|---|---|---|
| Calcium | | 9.1 | 8.6-10.4 | mg/dL |
| Glucose, serum | | 81 | 70-110 | mg/dL |
| Anion Gap | | 10.4 | 9.0-19.0 | mmol/L |
| AST | H | 38 | 10-37 | U/L |
| ALT | H | 54 | 8-40 | U/L |
| Alkaline Phosphatase | | 74 | 49-126 | U/L |
| Total Bilirubin | | 0.4 | 0.1-1.1 | mg/dL |
| Direct Bilirubin | | 0.1 | 0.0-0.3 | mg/dL |
| GGT | | 13 | 10-45 | U/L |
| Total Protein | | 6.8 | 6.3-8.3 | g/dL |
| Albumin | | 4.3 | 3.5-5.0 | g/dL |
| Cholesterol | | 162 | 50-200 | mg/dL |
| Triglyceride | | 55 | <150 | mg/dL |
| HDL-Cholesterol | | 38 | 35-80 | mg/dL |
| LDL calc | | 115 | 0-130 | mg/dL |
| Chol/HDL | H | 4.5 | 0.0-4.0 | |

## CHEMISTRY, URINE

| | | | | |
|---|---|---|---|---|
| Urine mAlbumin | | 0 | 0-17 | ug/mg |
| Urine Creatinine, random | H | 201 | 60-200 | mg/dL |
| mAlb/Creat ratio | | 0 | 0-29 | ug/mg Cr |

---

FLAG LEGEND    L=Low  Ll=Low Critical  H=High  Hl=High Critical  A=Abnormal  Al =Abnormal Critical

 **Federal Bureau of Prisons**

**FMC Rochester**
2110 E. Center Street
Rochester, MN 55904
507-287-0674

*** Sensitive But Unclassified ***

**Name** BARRETT, KENNETH
**Reg #** 04342-063
**DOB** 03/29/1961
**Sex** M

**Facility** USP Terre Haute
**RCH Unit**
**Provider** Roger Bailey, MD

**Collected** 01/02/2014 7:00
**Received** 01/03/2014 11:56
**Reported** 01/03/2014 14:02
**LIS ID** 003141707

## CHEMISTRY, URINE

A random mALB Creat ratio:
Category            Result
Normal              Less than 30
Microalbuminuria    30 - 299
Clinical albuminuria     Greater than 300
The ADA recommends that at least two of three specimens collected within a 3 - 6 month
period be abnormal before considering a patient to be within a diagnostic category.
ADA Diabetes Care, Vol. 34: S34, 2011 2011ADA Diabetes Care V34 S34 2011e

## HEMATOLOGY / COAG

| | | | |
|---|---|---|---|
| White Blood Count | 5.0 | 3.5-10.5 | K/uL |
| Red Blood Count | 4.72 | 4.10-6.00 | M/uL |
| Hemoglobin | 14.6 | 12.0-17.5 | g/dL |
| Hematocrit | 43.8 | 38.8-50.0 | % |
| MCV | 92.9 | 76.0-100.0 | fL |
| MCH | 30.9 | 27.0-33.0 | pg |
| MCHC | 33.2 | 28.0-36.0 | g/dL |
| RDW | 12.5 | 12.0-15.0 | % |
| Platelet | 243 | 150-450 | K/uL |
| Neutrophils % | 45.8 | 30.0-75.0 | % |
| Total Lymphocytes % | 43.3 | 15.0-45.0 | % |
| Monocytes % | 7.6 | 0.0-12.0 | % |
| Eosinophils % | 3.7 | 0.0-7.0 | % |
| Basophils % | 0.6 | 0.0-2.0 | % |
| Neutrophil # | 2.5 | 1.1-7.9 | K/uL |
| Total Lymphocytes # | 2.4 | 0.5-4.7 | K/uL |
| Monocytes # | 0.4 | 0.0-1.3 | K/uL |
| Eosinophils # | 0.19 | 0.00-0.70 | K/uL |
| Basophils # | 0.1 | 0.0-0.2 | K/uL |

Medical

To:
Dr Wilson    I already    From: Kenneth Barrett
                              #04342-063  S.CU.
                              415-B
            answered this

Sir.                    DR. W. WILSON.  MD  8/25/16
                        CLINICAL DIRECTOR
                        FCC TERRE HAUTE

On 7-14-16 I had a blood draw
the nurse said it was to check my liver
function. I asked about my viral
load being checked. And she said my
viral load will not be checked anymore.
I find this hard to belive since my last
blood draw for a viral load check showed
that it had jumped a couple million.
And was now over 10 million. Can
you explain to me why my viral load
will not be checked anymore. Thank you
Kenneth Barrett #04342-063 S.CU-415-B

Barrett, Kenneth
04342-063
X 02-411 L

Mr Ruloska → Dr Wilson                    8-17-16

Sir. At my last blood draw I was told that they
were only checking my liver function and would
not be checking my Hep C viral load anymore.

I wrote Dr Wilson over a month ago, asking if this
was true and why. But he never answered me.

I find this confuseing because my last viral load test
showed that I had a big jump and my count was
over 10 million now. Even Dr Wilson at our
last visit said It was a big jump.

If it's true and only my liver function is to be
tested. What happens if it quits functioning
between the test to see how it's functioning.
My liver bi-obsy showed bridging. And my viral
load has continued to climb. Which shows the
virus is speading. I know the viral load is
not the only way to keep a eye on my liver.
But it is important. So why stop?
                                   → BoP policy. The viral load
Thankyou, Kenneth Barrett         is not used to qualify for Treatment,
DR. H. WILSON. #MD 4342-063       and the Hepatic Prufile is used to
CLINICAL DIRECTOR J. CU-411-B     monitor.
FCC TERRE HAUTE 8/25/16

03/24/2016 3:55:28 PM -0400 FAXCOM          ↑                    PAGE. 2    OF 3

QUEST DIAGNOSTICS NICHOLS INSTITUTE
P.O. Box 10841 * 14225 Newbrook Drive, Chantilly, Virginia 20153-0841
                    Telephone: (703) 802-6900
 Age and sex dependent reference ranges are printed when available
if age and sex are designated.   Otherwise, adult values are given.


BARRETT, KENNETH              CH438789I          54 YEARS · MALE
  Page   1  From Chantilly       FOR WILLIAM WILSON                      X
  COLLECTED:   03/15/2016 06:00   1200 FCI - TERRE HAUTE - THA
  RECEIVED:    03/23/2016
  REPORTED:    03/24/2016          4200 BUREAU ROAD NORTH      FCC   TERRE HAU..
2016/  0/  1200/  0/33486891       TERRE HAUTE IN 47808
 · Please note:   04342-063

--------------TESTS------------RESULTS-FLAG--------REF. RANGE------UNITS

35645/Chantilly
HEPATITIS C, RNA, QUANTITATIVE, PCR
. HCV RNA, PCR, QN            10.4E6 H                <15     IU/mL
  HCV RNA, PCR, QN             7.02 H               <1.18  log IU/mL

        Please note:
        Due to character limitations of some clients' LIS
        systems, viral load values greater than 10 million are
        reported using scientific exponential notation.
        For example a result of 10 Million (10,000,000) is
        reported as 10.0E6 IU/mL or copies/mL. If your LIS
        will accept the number of characters required for
        viral loads greater than 10 million, please contact
        your local service representative to have this
        reporting convention changed.


        This test was performed using the COBAS(R) AmpliPrep/
        COBAS(R) TaqMan(R) HCV Test, v2.0.


        For more information on this test, go to
        http://education.questdiagnostics.com/faq/FAQ22v1


        The analytical performance characteristics of this
        assay have been determined by Quest Diagnostics
        Nichols Institute, Chantilly, VA. The modifications
        have not been cleared or approved by the FDA. This
        assay has been validated pursuant to the CLIA
        regulations and is used for clinical purposes.


                    *** FINAL REPORT ***      ·
[P 63909]-[S 1080]
                    Patrick W Mason, M.D., Ph.D.
                    Director of Laboratories

_Viral load shows I'm at 10 million 400 thousand._ (handwritten)

Cedar Diagnostics

575 Rivergate Lane, Ste. 106
Durango, CO 81301

06d1065912
*Alexander R. Cudkowicz, MD*

| | |
|---|---|
| Provider: GENEVIEVE MUSCATELL | Name/DOB:  BARRETT, KENNETH  (6/29/1961) |
| FCC-Terre Haute, Bureu of Prisons | Sex: M      Age: 57 |
| 4200 Bureau Road North | Address:    Terre Haute, IN  47802 |
| Terre Haute, IN | |
| Terre Haute, IN  47802 | |
| (812) 238-3439 | Phone No.: |

Draw Date: 7/25/2018  6:00 AM                     Sample ID: 401309
Delivery Date: 7/26/2018  12:04 PM                Patient ID: 0000043151
Approval date: 7/27/2018  8:45 AM

04342-063 SID200181789

| TEST NAME | RESULT | | UNITS | REFERENCE |
|---|---|---|---|---|
| | IN RANGE | OUT OF RANGE | | RANGE |
| Acetaminophen | <10 | | ug/mL | 10-30 |

Testing performed at Southwest Memorial Hospital lab.
1311 N Mildred Road, Cortez, CO, 81321.

Sample ID: 401309/1
END OF REPORT (Final)

Reviewed by: _____



**Federal Bureau of Prisons**

## FMC Rochester
2110 E. Center Street
Rochester, MN 55904
507-287-0674

*** Sensitive But Unclassified ***

| | | |
|---|---|---|
| Name BARRETT, KENNETH | Facility USP Terre Haute | Collected 07/25/2018 06:23 |
| Reg # 04342-063 | Order Unit X02-411L | Received 07/26/2018 11:13 |
| DOB 06/29/1961 | Provider Genevieve Muscatell, PA-C | Reported 07/26/2018 13:34 |
| Sex M | | LIS ID 192181638 |

### CHEMISTRY

| | | | | |
|---|---|---|---|---|
| Sodium | | 142 | 136-146 | mmol/L |
| Potassium | | 4.5 | 3.6-4.9 | mmol/L |
| Chloride | | 104 | 98-108 | mmol/L |
| CO2 | | 26 | 22-29 | mmol/L |
| BUN | | 20 | 7-24 | mg/dL |
| Creatinine | | 1.14 | 0.60-1.20 | mg/dL |
| eGFR (IDMS) | | >60 | | |

GFR units measured as mL/min/1.73m^2.
If African American multiply by 1.210.
A calculated GFR <60 suggests chronic kidney disease if found over a 3 month period.

| | | | | |
|---|---|---|---|---|
| Calcium | | 9.2 | 8.6-10.4 | mg/dL |
| Glucose | | 99 | 70-110 | mg/dL |
| AST | | 36 | 10-37 | U/L |
| ALT | H | 49 | 8-40 | U/L |
| Alkaline Phosphatase | | 70 | 49-126 | U/L |
| Bilirubin, Total | | 0.6 | 0.1-1.1 | mg/dL |
| Total Protein | | 7.0 | 6.3-8.3 | g/dL |
| Albumin | | 4.5 | 3.5-5.0 | g/dL |
| Globulin | | 2.5 | 2.0-3.7 | g/dL |
| Alb/Glob Ratio | | 1.80 | 1.00-2.30 | |
| Anion Gap | | 12.1 | 9.0-19.0 | |
| BUN/Creat Ratio | | 17.5 | 5.0-30.0 | |

### HEMATOLOGY

| | | | | |
|---|---|---|---|---|
| WBC | | 4.2 | 3.5-10.5 | K/uL |
| RBC | | 4.89 | 4.10-6.00 | M/uL |
| Hemoglobin | | 14.8 | 12.0-17.5 | g/dL |
| Hematocrit | | 44.4 | 38.8-50.0 | % |
| MCV | | 90.9 | 76.0-100.0 | fL |
| MCH | | 30.3 | 27.0-33.0 | pg |
| MCHC | | 33.3 | 28.0-36.0 | g/dL |
| RDW | | 12.7 | 12.0-15.0 | % |
| Platelet | | 223 | 150-450 | K/uL |

**FLAG LEGEND    L=Low  Ll=Low Critical   H=High  HI=High Critical   A=Abnormal  Al =Abnormal Critical**

Page 1 of 1

 

US POSTAGE & FEES PAID
PRIORITY MAIL
FLAT-RATE ENVELOPE
ComPlsPrice

062SC009993649
7675415
FROM 95814

stamps
endicia
07/26/2019

# PRIORITY MAIL 2-DAY™

OFFICE OF THE FEDERAL DEFENDER
801 I STREET, 4TH FLOOR
SACRAMENTO CA 95814

R021

SHIP
TO:

T.J. Watson, Warden
U.S. Penitentiary
USP - Terre Haute
4700 Bureau Road S
Terre Haute IN 47802-8246

## USPS TRACKING #



9405 5116 9900 0031 2185 76

# USPS Tracking®

Track Another Package +

Tracking Number: 9405511699000031218576                    Remove

**Status**

Your item was picked up at a postal facility at 12:24 pm on July 29, 2019 in TERRE HAUTE, IN 47802.

☑ **Delivered**

July 29, 2019 at 12:24 pm
Delivered, Individual Picked Up at Postal Facility
TERRE HAUTE, IN 47802

Get Updates ∨

Delivered

# Appendix B

# Draft Complaint for Declaratory and Injunctive Relief

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Terre Haute Division

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT | ) | Case No._____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| KATHLEEN HAWK SAWYER, Director | ) | |
| Federal Bureau of Prisons | ) | |
| | ) | |
| and | ) | |
| | ) | |
| T.J. WATSON, Warden | ) | |
| USP Terre Haute, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1. Defendants have refused to provide life-saving treatment to Plaintiff for his long-standing condition of chronic Hepatitis C ("HCV") and, by so doing, have violated accepted medical standards of care, as well as their own internal policies. This willful refusal has put Plaintiff at serious risk of pain, liver failure, cancer and ultimately death — despite the fact that there are medications that could cure Plaintiff with little to no side effects. Defendants' actions amount to a deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment to the United States Constitution, and discrimination on the basis of disability, in violation of the

1

Americans with Disabilities Act and Rehabilitation Act. Accordingly, Plaintiff seeks declaratory and injunctive relief so that he can receive the treatment that he desperately needs.

## Jurisdiction

2. This Court has subject matter jurisdiction over the allegations presented herein pursuant to 28 U.S.C. § 1331, in that the claim for injunctive relief arises under the United States Constitution and federal statutes, including the Administrative Procedure Act (APA), 5 U.S.C. § 702, which waives sovereign immunity for an action seeking relief other than monetary damages against an agency, as well as the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and the Rehabilitation Act (RA), 29 U.S.C. § 794. The request for declaratory relief is based upon 28 U.S.C. § 2201, in that an actual controversy exists between Defendants and Plaintiff over the denial of services that are guaranteed by the United States Constitution.

## Venue

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the acts or omissions that gave rise to Plaintiff's claim occurred or will occur in Vigo County, Indiana in the Southern District of Indiana.

## Parties

4. The Plaintiff is Kenneth Eugene Barrett, a condemned prisoner housed at USP Terre Haute in the Special Confinement Unit. Mr. Barrett is challenging his death sentence through appeals currently pending. As such, Mr. Barrett's sentence of death is many years away from being carried out, if ever. Mr. Barrett has been diagnosed with chronic HCV since at least 2011 but has never received treatment. Mr. Barrett has

2

attempted to obtain treatment for HCV and has exhausted all available administrative remedies to do so.

5. Defendant Federal Bureau of Prisons ("BOP") is a federal law enforcement agency subdivision of the United States Department of Justice ("DOJ"), and is responsible for the administration of federal prisons, including USP Terre Haute. The BOP maintains physical custody of Plaintiff. The BOP is charged with establishing and carrying out policies and regulations that are safe, humane and secure for all federal penitentiaries.

6. Defendant Kathleen Hawk Sawyer is the Director of the BOP. She is sued herein in her official capacity.

7. Defendant T. J. Watkins is the current warden at USP Terre Haute. He is sued herein in his official capacity.

**Facts**

*A. HCV and its Symptoms*

8. HCV is a blood borne disease caused by the hepatitis C virus. The virus causes inflammation that damages liver cells, and is a leading cause of liver disease and liver transplants.

9. HCV is transmitted by infected blood via several methods, including intravenous drug use and tattooing using shared equipment, blood transfusions with infected blood (typically before regular screening of donated blood began), and sexual activity.

10. HCV can be either acute or chronic. In people with acute HCV, the virus will spontaneously clear itself from the blood stream within six months of exposure. Chronic HCV, on the other hand, is defined as having a detectable HCV viral level in

3

the blood at some point six months after exposure. Fifty-five to eighty-five percent of infected people will develop chronic HCV.

11. Liver inflammation caused by chronic HCV can significantly impair liver function and damage its crucial role in digesting nutrients, filtering toxins from the blood, fighting infection, and conducting other metabolic processes in the body. Liver inflammation can also cause fatigue, weakness, muscle wasting, skin rashes, and arthritis.

12. People with chronic HCV develop fibrosis of the liver, a process by which healthy liver tissue is replaced with scarring. Scar tissue cannot perform the job of normal liver cells, so fibrosis reduces liver function and results in the same symptoms mentioned above, but with greater intensity. Fibrosis can also lead to hepatocellular carcinoma (liver cancer).

13. When scar tissue begins to take over most of the liver, this extensive fibrosis is termed cirrhosis. Of those with chronic HCV, the majority will develop chronic liver disease and approximately 20% will develop cirrhosis in a 20-year timeframe.

14. Cirrhosis causes additional painful complications, including widespread itching, kidney disease, jaundice, fluid retention with edema, internal bleeding, varices (enlarged veins that develop in the esophagus or intestines, which can burst), easy bruising, ascites (fluid accumulation in the legs and abdomen), encephalopathy (mental confusion and disorientation), lymph disorders, increased risk of infection, seizures, and extreme fatigue. Most of these complications can occur before cirrhosis. If they go untreated, some can cause death, often from infection, bleeding, and fluid accumulation.

4

## B. Standard of Care for HCV

15. For many years, there were no universally safe and effective treatments for HCV. The standard treatment prior to 2011, which included the use of interferon and ribavirin medications, sometime required injections, had a long treatment duration (up to 48 weeks), failed to cure most patients, and was associated with numerous side effects, including psychiatric and autoimmune disorders, flulike symptoms, gastrointestinal distress, skin rashes, and severe anemia. Moreover, not all drug regimens worked for all types of HCV, and many could not be given to patients with other co-morbid diseases.

16. In 2011, however, the Food and Drug Administration (FDA) began approving new oral medications, called direct-acting antiviral (DAA) drugs, which have proven to work more quickly, cause fewer side effects, and treat chronic HCV much more effectively. At first, they were designed to work in tandem with the old treatment regimen. But beginning in 2013, the FDA began to approve DAA drugs that can be taken alone.

17. These DAA drugs have far fewer side effects, dramatically greater efficacy, a shorter treatment duration (12 weeks), and are administered orally (commonly a once-daily pill) rather than by injections. They have truly revolutionized the way HCV is treated.

18. Most importantly, 90 to 95% of HCV patients treated with any of these DAA drugs are cured, whereas the old treatment regime only helped roughly one-third of patients.

19. The American Association for the Study of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA) have set forth guidelines ("the Guidelines") for the treatment of HCV, including guidelines for treatment in prison

5

settings. *See* HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C, available at https://www.hcvguidelines.org.

20. The Guidelines recommend as follows: Chronically infected individuals whose jail sentence is sufficiently long enough to complete a recommended course of antiviral therapy should receive treatment for chronic HCV infection according to AASLD/IDSA guidance while incarcerated. *See id.*

### C. Current BOP Protocol

21. The most recent BOP guidelines and policy for treatment of chronic HCV were issued in August 2018, entitled "Federal Bureau of Prisons Clinical Guidance, Evaluation and Management of Chronic HCV Infection," ("Protocol"), available at https://www.bop.gov/resources/pdfs/hcv_infection_20180906.pdf.

22. The Protocol refers to and echoes the AASLD/IDSA Guidelines goal to "reduce all-cause mortality and liver-related health adverse consequences, including end- stage liver disease and hepatocellular carcinoma, by the achievement of virologic cure as evidenced by a sustained virologic response." *See* Protocol at 1.

23. Applying the Guidelines, the Protocol further states that "All sentenced inmates with chronic HCV infection are eligible for consideration of treatment." *Id.*

24. However, **unlike** the Guidelines, the Protocol sets out Priorities for treatment based on the BOP's assertion that "[c]ertain cases are at higher risk for complications or disease progression and may require more urgent consideration for treatment." *Id.* at 8. These categories are "High, Intermediate or Low." *Id.* at 8-9. The prioritization scheme relies largely on the "ASP-Platelet Ration or APRI score" and the level of liver fibrosis. *See id.*

6

25. In addition, the Protocol sets forth additional specific criteria that an inmate must meet in order to receive treatment. *See id.* at 9. These include: having no contraindications or drug interactions with treatment; not being pregnant; having sufficient time remaining on sentence to complete treatment; having a life expectancy greater than 18 months, and being willing and able to adhere to rigorous treatment regimens and refrain from high-risk behaviors. *See id.*

26. The prioritization system set forth in the BOP's Protocol is not in accordance with the accepted Guidelines for treating HCV which advise treatment for all infected. *See Stafford v. Robert E. Carter, Jr., Michael Mitcheff, M.D., Monica Gipson, R.N., Wexford of Ind., LLC*, No. 1:17-cv-00289-JMS-MJD (S.D. Ind. Sept. 13, 2018).

### D. Facts Specific to Mr. Barrett

27. Mr. Barrett, age 58, has been incarcerated by the BOP since 2005. He has chronic HCV and fibrosis of the liver. His chronic HCV is a physiological disorder or condition that affects one or more of his body systems, including but not limited to the digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems, and is therefore a physical impairment. This physical impairment substantially limits one or more major life activity, including but not limited to walking, bending, sitting, lifting, and thinking; the operation of major bodily functions such as his digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems; and the operation of his liver.

28. Mr. Barrett meets the essential eligibility requirements for the receipt of services or provided by the BOP, including but not limited to medical services.

29. Mr. Barrett has chronic HCV and the BOP has been on notice of his condition since at least 2011. His viral loads have exceeded 10,000,000 U/L since 2016 and his liver enzymes have exceeded the acceptable range since at least 2012. He underwent a liver biopsy in 2012 and was identified then as having stage 2 fibrosis of the liver. The BOP has denied further testing, although his physician has recommended treatment.

30. Mr. Barrett meets all the eligibility requirements set forth in the BOP protocol for treatment.

31. Mr. Barrett has filed a minimum of seven grievances and appeals based on the denial of treatment beginning in 2012 up until the end of 2018. (These grievances and responses are attached as Exh. A.)

32. Mr. Barrett's most recent grievance was initiated on September 4, 2018 and then appealed to the Regional Director. *See* Exh. A. The Regional Director found that Mr. Barrett met the Level 3 Priority criteria ("Low") and thus, would continue to be monitored only. *See id.* at Response 954875-R1.

33. Mr. Barrett then appealed to the Central Office and received a response on January 29, 2019. This response recognized that "[t]he BOP expanded access to Hepatitis C treatment to all inmates in August 2018," and that "[a] liver biopsy on December 28, 2011 showed Stage 2 liver fibrosis which meets Priority Level 2 criteria." *Id.* at Response 954875-A1. Nonetheless, despite recognizing that Mr. Barrett met Intermediate Priority for treatment, the Response remarkably concluded that "[b]ased on this information, there is no evidence to substantiate your claim of being denied appropriate medical care." *Id.*

8

34. On February 20, 2019, Mr. Barrett's counsel requested Mr. Barrett's medical records from the BOP. The BOP sent a response received on March 4, 2019, stating that processing such requests could take six months. This request is still pending.

35. On July 26, 2019, Mr. Barrett's counsel sent a letter to Defendant Watson demanding treatment for Mr. Barrett's HCV. Warden Watson never responded to the letter. (The letter is attached as Exh. B.)

36. The BOP's deliberate indifference to Mr. Barrett's serious medical needs has caused his quality of life to substantially deteriorate. He is at risk for developing further symptoms, further advanced liver failure, and even death.

37. Despite Mr. Barrett qualifying for HCV treatment under the Guidelines **and** the BOP's own guidelines, he continues to be denied treatment.

38. Because the standard of care is to treat everyone, without regard to the stage of the disease, Defendants' written policy (even if it was followed) of only providing treatment to patients with the most advanced stages of the disease amounts to deliberate indifference to serious medical needs, in violation of the Eighth Amendment. It is not consistent with the standard of care. Delaying treatment until a patient is extremely sick has the perverse effect of withholding treatment from the patients who could benefit the most from it, because the treatment is less effective for patients with the most advanced stages of the disease.

39. Mr. Barrett will continue to suffer, and his liver disease will continue to advance, unless he receives the DAA drug treatment.

### CAUSES OF ACTION

### COUNT I
### Eighth Amendment to the U.S. Constitution

9

40. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

41. Defendants know about and enforce the policies and practices described herein. Defendants know of Plaintiff's serious medical needs, yet Defendants have intentionally failed and refused to provide treatment that will address those serious medical needs, knowing that those actions have resulted, and will continue to result, in Plaintiff's continued suffering and exposure to liver failure and its symptoms, liver cancer, and death.

42. Defendants have caused the wanton infliction of pain upon Plaintiff and have exhibited deliberate indifference to the serious medical needs of Plaintiff, in violation of the Eighth Amendment.

43. Defendants know, and have known, of the substantial risk of serious harm, and actual harms, faced by Plaintiff. Yet Defendants have disregarded, and continue to disregard, those risks and harms by failing to provide the very medication that would alleviate those risks and harms. Defendants have been deliberately indifferent to the substantial risk of serious harm to Plaintiff.

44. By denying Plaintiff his medically needed HCV treatment, Defendants have imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

45. Defendants' denial of Plaintiff's medically necessary HCV treatment violates all standards of decency, contrary to the Eighth Amendment.

46. Defendants' actions with respect to Plaintiff amount to grossly inadequate care.

10

47. Defendants' actions with respect to Plaintiff are medical care so cursory as to amount to no medical care at all.

48. As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Plaintiff has suffered, and continues to suffer from harm and violation of his Eighth Amendment rights. These harms will continue unless enjoined by this Court.

## COUNT II
### Americans with Disabilities Act, 42 U.S.C. § 12131, et seq

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

50. This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. and 42. U.S.C. § 12131 – 12134, and its implementing regulations.

51. Defendant BOP is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

52. Plaintiff has chronic HCV, which is a physiological disorder or condition that affects one or more body systems, including but not limited to the digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems, and is therefore a physical impairment. 42 U.S.C. § 12102(1) & (2); 28 C.F.R. § 35.108(a) & (b). This physical impairment substantially limits one or more major life activity, including but not limited to eating, walking, bending, lifting, concentrating, thinking, and communicating; the operation of major bodily functions such as digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems; and the operation of the liver. 42 U.S.C. § 12102(2); 28 C.F.R. § 35.108(c).

11

53. Plaintiff has a record of having an impairment that substantially limits one or more major life activity, as he has a history of such an impairment. 42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

54. Plaintiff is regarded by the Defendants as having an impairment that substantially limits one or more major life activity, as Defendants perceive him as having such an impairment. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f).

55. Plaintiff is a qualified individual with a disability because he meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the BOP, including but not limited to medical services. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

56. By withholding medical treatment from Plaintiff, but not withholding medical treatment from those with other disabilities or those who are not disabled, Defendants exclude Plaintiff from participation in, and deny him the benefits of BOP services, programs, and activities (such as medical services), by reason of his disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

57. By withholding medical treatment from Plaintiff, but not withholding medical treatment from those with other disabilities or those who are not disabled, Defendants subject Plaintiff to discrimination. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

58. Defendants fail to provide Plaintiff with equal access and enjoyment of effective medical services. 28 C.F.R. § 35.130(b)(1). Defendants utilize criteria or methods of administration that have the effect of subjecting Plaintiff to discrimination and that defeat or substantially impair accomplishment of the objectives of medical treatment for HCV. 28 C.F.R. § 35.130(b)(3).

12

59. Defendants have known about the violations noted herein but have failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

60. As a direct and proximate cause of these actions and omissions, Plaintiff has suffered and continues to suffer from harm and violation of his ADA rights. These harms will continue unless enjoined by this Court.

## COUNT III
## Rehabilitation Act, 29 U.S.C. §§ 791 – 794a

61. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

62. This count is brought under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, et seq. and 29 U.S.C. §§ 791 – 794, et seq., and it implementing regulations.

63. Defendant BOP is a program or activity receiving federal financial assistance. 29 U.S.C. § 794.

64. Defendants exclude Plaintiff from participation in, and deny him the benefits of programs or activities, solely by reason of his disability. 29 U.S.C. § 794(a); 28 C.F.R. § 42.503(a).

65. Defendants deny Plaintiff the opportunity accorded others to participate in programs or activities. 28 C.F.R. § 42.503(b)(1).

66. Defendants have known about the violations noted herein but have failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

67. As a direct and proximate cause of this exclusion, Plaintiff has suffered and continues to suffer from harm and violation of his RA rights. These harms will continue unless enjoined by this Court.

## PRAYER FOR RELIEF

13

68. WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

69. Exercise jurisdiction over this action;

70. Issue appropriate declaratory and injunctive relief to stop the constitutional violations described above and to ensure that Plaintiff immediately receive appropriate treatment for his HCV, including treatment with direct-acting antiviral medications;

71. Grant such other relief as this Court deems just and proper.


Dated:                                              Respectfully submitted,


**ATTACHMENTS**

Exh. A.:       Plaintiff's Grievances, Appeals and Responses

Exh. B:       Plaintiff's Counsel July 2019 Letter to Defendant Warden


14

